**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ATLANTA INDEPENDENT SCHOOL SYSTEM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.F., a minor, by and through his parents and next friends, M.F., and C.F., and M.F. and C.F. Personally, | : | CIVIL ACTION NO. 1:09-CV-2166-RWS |
| Defendants, Counterclaimants, and Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GWENDOLYN STOKES and SHERRI JONES, | : | |
| | : | |
| Third-Party Defendants. | : | |
| | : | |

## <u>ORDER</u>

This case comes before the Court on Defendant and Counter-Plaintiff

S.F.'s First Motion for Summary Judgment [48], Third-Party Defendant Sherri

Jones's Motion to Dismiss [92], Third-Party Plaintiffs S.F. et al.'s Motion to

Amend the Complaint as Against Defendant Jones [117], Third-Party

Defendant Gwendolyn Stokes's Motion to Dismiss [64], Third-Party Plaintiffs

S.F. et al.'s Motion to Amend the Complaint as Against Defendants Stokes

[124], Third Party-Plaintiffs' Motion to Take Judicial Notice [150], Defendants'

Motion In Limine [130], and Third-Party Defendant Jones's Motion for Oral

Argument [162].  After reviewing the record, the Court enters the following

order.

     As an initial matter, the Court does not find oral argument to be

necessary regarding Jones's Motion to Dismiss [92] or Third-Party Plaintiffs'

Motion to Take Judicial Notice [150].  Therefore, Jones's Motion for Oral

Argument [162] is **DENIED**.

### Background

     The underlying action arises from allegations that the Atlanta

Independent School System ("AISS") denied S.F. a free and appropriate public

education ("FAPE") and violated the Individuals with Disabilities in Education

Act ("IDEA"), 20 U.S.C. §§ 1400-1491.  (Amended Complaint, Dkt. No. [75]

at ¶ 3).  The stated purpose of the IDEA is "to ensure that all children with

disabilities have available to them a free appropriate public education ("FAPE")

that emphasizes special education and related services designed to meet their

unique needs . . ." 20 U.S.C. § 1400(d)(1)(A).  If the parents of a disabled child

are dissatisfied with their child's individualized education program ("IEP"), the

IDEA requires the educational agency to afford them an impartial due process

hearing.  20 U.S.C. § 1415(f)(1)(A).  S.F.'s parents, dissatisfied with S.F.'s IEP,

sought a due process hearing.

An administrative hearing was held in the Georgia Office of State

Administrative Hearings ("OSAH") from March 9-13, 2009.  (Dkt. No. [75] at

¶¶ 7, 15).  On May 11, 2009, the Administrative Law Judge ("ALJ") issued a

final order ("Final Order"), finding, among other things, that AISS failed to

provide FAPE to S.F., that his school placement by AISS was not appropriate,

and that S.F. will not receive an appropriate education from AISS going

forward. (Id. at ¶ 8; see Final Order, Dkt. No. [75-1]).  The ALJ also found that

S.F. was injured by an adult as the result of being struck by a hand or object at

school in his instructional program on October 21, 2008.  (Dkt. No. [75-1] at

18).  Based upon these findings, the ALJ ordered that:

> S.F. shall receive one year of compensatory education to be
> provided at the end of the Plaintiffs [*sic*] educational entitlement
> and further, that Plaintiffs shall be reimburse[d] by AISS for
> privately provided services and private assessments in the amounts
> stipulated at trial for the two (2) years prior to the filing of their
> Complaint through the 2008-2009 school year, including, but not
> limited to direct services, related services, and transportation or
> travel services.

(Dkt. No. [75-1] at 26).  The ALJ also ordered that "S.F.'s prospective placement for the remainder of his educational entitlement shall be in a private school at the Summit Learning Center," and that AISS shall pay for the placement as well as supplementary educational services for S.F.  (Id.).

Any party aggrieved by the result of the administrative proceedings in the state system has the right to bring a civil action in the district court.  20 U.S.C. § 1415(i)(2)(A).  Plaintiff has filed the current action to appeal the ruling of the ALJ.  Defendants have filed a Counterclaim against AISS, as well as a Third Party Complaint against Gwendolyn Stokes, AISS's special education compliance coordinator and Sherri Jones, S.F.'s classroom teacher.

During the 2008-09 school year, S.F. and his parents  ("Third-Party Plaintiffs" or "Plaintiffs") raised concerns with his safety, his school placement, the actions of Jones, and the denial of rights under the IDEA.  (Dkt. [117-2] at ¶ 13).  Jones was aware of these concerns.  (Id.).  S.F.'s parents allege that he suffered significant injuries at school in September 2008, and these injuries were not adequately explained.  (Id. at ¶ 15).  Plaintiffs allege that Jones was aware of S.F.'s autism and the limits it placed on his ability to communicate to his parents anything that occurred within his classroom. (Id. at ¶ 12).  At least in part because of S.F.'s limitation, Jones failed to implement S.F.'s IEP or

behavioral interventions.  (Id. at ¶ 17).  Instead, she unilaterally created a schedule that failed to provide S.F. with FAPE.  (Id. at ¶ 18).

In addition to her failure to provide an appropriate educational program for S.F., Third-Party Plaintiffs also allege that Jones engaged in highly inappropriate behavior within the classroom.  Failing to receive a satisfactory explanation for S.F.'s injuries and failing to make headway on determining whether S.F. was receiving appropriate services within the classroom, S.F.'s mother, C.F., sent him to school on October 21, 2008 with a recording device sewn into his shirt so that she could record his school day.  The recording allegedly captures Jones discussing alcohol, male genitalia, and other inappropriate topics in the classroom.  (Dkt. [124-2] at ¶ 19).  Additionally, Plaintiffs allege that the recording captures Jones allowing S.F. to eat garbage from the trash can, taunting and ridiculing him, and ultimately beating him. (Id. at ¶¶ 23-25).  Following, Plaintiffs confrontation with school officials concerning Jones's behavior, they allege that Jones sought to hinder the investigation by intentionally withholding information and lying about her actions.  (Id. at 32).  Plaintiffs assert several causes of action against Jones arising from this conduct.

Third-Party Defendant Stokes was the AISS administrator responsible for

administering and coordinating S.F.'s AISS placement for 2008-09.  Plaintiffs

assert that she was responsible for ensuring that a safe environment was

provided in which S.F. could receive the educational programs to which he was

entitled.  (Dkt. [124-1] at ¶ 9).  Plaintiffs allege that AISS and Stokes failed to

provide appropriate services to S.F. throughout the school year and failed to

address any of their concerns as to the lack of services and injuries to S.F. in

Jones's classroom.  (Id. at ¶ 11).  Plaintiffs allege that even after Stokes became

aware of the recording they made of S.F.'s school day, she never sought a copy

of it and failed to remedy the concerns raised by the recording.  (Id. at ¶¶ 30-

32).  At an IEP meeting held in November 2008, Plaintiffs assert that Stokes

accused them of committing a felony by recording S.F.'s school day.  (Id. at ¶

31).  Plaintiffs assert several causes of action against Stokes arising from this

conduct.

## Discussion

## I.      Defendants First Motion for Summary Judgment [48]

In its Complaint, AISS asks the Court to order, among other things, that

"Defendants C.F. and M.F. are required to reimburse AISS for AISS's

payments for S.F.'s private services since the date of the ALJ's Final Order."

(Dkt. [75] at 49).  Defendants S.F. *et. al.* argue that even if this Court finds the

6

ALJ's Final Order to be erroneous, the law does not allow AISS the right to reimbursement of the money paid for private services pursuant to that Order. Defendants seek partial summary judgment as to AISS's claim for reimbursement.  (Dkt. [48]).

It is well settled that parents of a disabled child are entitled to reimbursement of private school expenses if such placement, rather than the proposed IEP, is deemed to be proper.  See Sch. Comm. of Town of Burlington v. Dept. of Educ., 471 U.S. 359, 369, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985); Georgia State Dept. of Educ. v. Derrick C., 314 F.3d 545, 552 (11th Cir. 2002); see also 20 U.S.C. § 1415(j) ("stay put" or "maintenance of placement" provision of the IDEA); 34 C.F.R. § 300.518(a), (d).  The question this Court must answer is whether AISS is entitled to reimbursement of the cost of the ALJ's award of private placement and services if that award is subsequently found to be erroneous.  AISS notes in its response that this question "is purely a legal one and is proper for determination by this Court at this time."  (Dkt. [71] at 1).  Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

7

While the specific question of law posed by Defendants' Motion for Summary Judgment [48] has not been addressed by the Eleventh Circuit, other courts have examined it.  In Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, the school district argued that the disabled child's parents should bear the cost of the private placement, despite the fact that they won administrative and district court decisions holding that the placement was appropriate.  903 F.2d 635, 641 (9th Cir. 1990).  The Ninth Circuit, however, agreed with the parents that "the school district and state [were] responsible for the costs of [the child's] placement during the court review proceedings regardless of which party prevails in [the] appeal."  Id.  The Second Circuit noted that once a parents' challenge to their child's IEP succeeds, the school district's consent to the private placement of the child is implied by law, and the maintenance of that placement becomes the responsibility of the school district. Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002) (citing Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (finding that the "stay-put" provision of the IDEA represents "Congress'[s] policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved")).  The regulations

8

implementing the IDEA state that "[i]f the hearing officer in a due process hearing conducted by . . . a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents . . . ."  34 C.F.R. § 300.518(d).  Other courts have also found that a school district has no claim for reimbursement for funds expended on the private placement of a disabled child.  See e.g., Henry v. Sch. Admin. Unit. No. 29, 70 F. Supp. 2d 52, 59 (D.N.H. 1999) ("[I]f a local educational agency refused to pay for the proposed interim placement but the parents obtain an order from the state educational agency approving the placement, the school district must pay for the placement from the date of the agency decision, without a right to reimbursement, even if a federal court reviewing the decision later rules in the School District's favor.").

In response AISS argues that the language of the Supreme Court's decision in Town of Burlington[1], principles of equity, and the Spending Clause of the U.S. Constitution support a reimbursement of expenses paid by AISS if this Court ultimately finds the ALJ's order to be erroneous.  (See Dkt. [71]).

---

[1] Sch. Comm. of Town of Burlington v. Dept. of Educ., 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

However, AISS has not cited to any case in which parents were ordered to reimburse a school district for educational expenses an administrative officer ordered the school district to pay for a child's private educational services following a reversal of the administrative order.  AISS cites <u>Doe v. Brookline Sch. Comm.</u> for the proposition that "courts have recognized that restitution to a school district for unwarranted expenses it paid pursuant to an erroneous lower court's order may be appropriate under some circumstances."  722 F.2d 910 (1st Cir. 1983).  However, as the First Circuit later noted,

> [t]he posture of [<u>Brookline</u>] . . . was markedly different from this one.  In <u>Brookline</u>, the state hearing officer ruled that the Town's proposed IEP, under which it planned to transfer the child from the private school he had been attending for two years at public expense, and reenroll him in a public school with special services, was adequate and appropriate.  The parents then rejected the [hearing officer's] decision and appealed to a federal court.  By contrast, here the parents maintained [their child] in the [private placement] consistent with the state agency order in their favor.  It was the Town that brought suit to reverse the State agency decision.

<u>Town of Burlington v. Dept. of Educ.</u>, 736 F.2d 773, 799-800 (1st Cir. 1984).

The procedural posture–by which the First Circuit distinguished <u>Burlington</u> from <u>Brookline</u>–in this case is like that present in <u>Burlington</u>, not <u>Brookline</u>.  In <u>Burlington</u>, the parents argued "that unless parents are of considerable means, few will be able or willing to implement a state agency decision in their favor if

they stand liable to reimburse a town or local school system at final judgment."

Id. at 800.  The First Circuit stated that

> [c]onsidering the [IDEA] as a whole and the interests it seeks both
> to protect and to further, we conclude that [the parents']
> contentions must be sustained in part in the present case.
> Retroactive reimbursement by parties is not "appropriate" relief
> within the meaning of [the IDEA] where they relied on and
> implemented a state administrative decision in their favor ordering
> a particular placement.

Id.  Thus the First Circuit held that where a "final state administrative decision

rules a town's proposed IEP inappropriate and orders the town to fund

placement, and the parents have complied with and implemented that decision,

a town or local educational agency is estopped from obtaining reimbursement

for the time period . . . covered by the state agency decision and order."  Id. at

800-01.  Therefore, AISS's reliance on Brookline is misplaced.

This Court agrees with the decisions reached by those courts discussed

above that held that parents of a child awarded private educational services

because the IEP offered by the school was deemed to be inappropriate are not

required to reimburse the school district for that expenditure, even if the

administrative decision is later reversed.  As noted by the First Circuit in

Burlington, this conclusion is warranted by a consideration of the IDEA as a

whole and the interests it seeks to protect and further.  736 F.2d at 800.

11

Therefore, Defendants' First Motion for Summary Judgment [48] is

**GRANTED**.

## II.     Defendants Motion in Limine [130]

Defendants seek to restrict any attempt by AISS to present evidence

relating to the Petition for Divorce and Motion for Protective Order filed by

C.F. against M.F.  In its July 30, 2010 Order with respect to discovery matters,

the Court agreed with Defendants that the divorce petition and request for

temporary restraining order from October 2007 will "only be used to impugn

the character of M.F. and is not relevant to determining what happened to S.F.

on October 21, 2008."  (Dkt. [151] at 22).  Federal Rule of Evidence 404(a)

states: "Evidence of a person's character or a trait of character is not admissible

for the purpose of proving action in conformity therewith on a particular

occasion . . . ."  Events described in the divorce petition or motion for protective

order are not relevant to what occurred on October 21, 2008.  In its July 30,

2010 Order the Court allowed AISS to discover "all documentation or other

tangible items that relate or pertain to any allegations or instances of physical

abuse committed by M.F. against S.F. from October 14, 2008 to October 22,

2008.  Anything outside this period has very limited, if any, probative value as

to how S.F. was injured on October 21, 2008."  (Id. at 23).  Given that the

12

divorce petition and motion for protective order predates this period by almost a year, AISS is restricted from presenting any additional evidence in relation to either.  To the extent that the divorce petition and motion for protective order were introduced at the administrative proceeding and are already a part of the record that this Court will review, the Court will consider the documents, but will not allow any additional use or admission of the documents.  Defendants Motion in Limine [130] is **GRANTED**.

**III.    Third-Party Defendant Jones's Motion to Dismiss [92], Third-Party Plaintiffs' Motion to Amend the Complaint as Against Jones [117], and Third-Party Plaintiffs' First Motion for Order to Take Notice of Decision of Georgia OSAH on its Jurisdiction [150]**

A.     <u>Standard for Allowing Amendment of Complaint</u>

Other than amendments allowed as a matter of course by Fed. R. Civ. P. 15(a)(1), a party must either seek the written consent of the opposing party or leave of the court to amend its pleading.  Fed. R. Civ. P. 15(a)(2).  Rule 15 directs the Court to "freely give leave when justice so requires."  <u>Id.</u>  Despite an instruction that leave should be freely given when justice so requires, leave to amend is "by no means automatic." <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court has "extensive discretion" in deciding whether to grant leave to amend. <u>Campbell v. Emory Clinic</u>, 166 F.3d

13

1157, 1162 (11th Cir. 1999).  A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile." Id.  A claim is futile if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter of law").

B.   Proposed Amended Complaint

In the Proposed Amended Complaint Against Jones [117-2], Third-Party Plaintiffs seek to raise a new cause of action against Jones under Section 503 of the Americans with Disabilities Act, 42. U.S.C. § 12203 ("ADA" or "the Act"), "alleging personal liability for harassing retaliatory conduct."  (Dkt. [117-1] at 2).  The Proposed Amended Complaint restates Third-Party Plaintiffs' claims under 42 U.S.C. § 1983 in response to Jones's objections set forth in her Motion to Dismiss [92].  (Dkt. 117-1 at 2).  The Proposed Amended Complaint also re-pleads claims for assault, battery, and intentional infliction of emotional distress under Georgia law.  The Proposed Amended Complaint does not re-plead the slander claim against Defendant Jones.

C.   Sufficiency of the Proposed Amended Complaint

Third-Party Defendant Jones does not object that the Proposed Amended

14

Complaint follows undue delay or prejudices her, but rather that the proposed amendment is futile and therefore should not be allowed.  The Court will examine the strength of each of the causes of action asserted in the Proposed Amended Complaint by determining whether each would be sufficient to withstand a motion to dismiss.[2]  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Iqbal, 129 S. Ct. at 1949.  The Court does not need to "accept as true a legal

---

[2]Jones filed a Motion to Dismiss [92] the original Third-Party Complaint [Dkt. No. 5-1].  To the extent Third-Party Plaintiffs re-plead claims from the original Third-Party Complaint in the Proposed Amended Complaint, the Court has considered the briefs of the parties related to the Motion to Dismiss.  However, in light of the filing of the Amended Complaint, the Motion to Dismiss [92] the original Third-Party Complaint is **Denied, as moot**.

conclusion couched as a factual allegation." <u>Iqbal</u>, 129 S. Ct. At 1950 (quoting

<u>Twombly</u>, 550 U.S. at 555).

                i.      Exhaustion of Administrative Remedies

As an initial matter, Jones argues that Third-Party Plaintiffs' ADA,

Section 1983, and First Amendment Claims must fail because Plaintiffs have

failed to exhaust their administrative remedies as required by the IDEA.  The

IDEA allows plaintiffs to seek "remedies available under the Constitution, [the

ADA], or other Federal laws protecting the rights of children with disabilities."

20 U.S.C. § 1415(l).   However, such additional claims are subject to an

exhaustion requirement: "[B]efore the filing of a civil action under such laws

seeking relief that is also available under this subchapter, the procedures under

subsections (f) and (g) of this section shall be exhausted to the same extent as

would be required had the action been brought under this subchapter."  <u>Id.</u>

"The philosophy of the [IDEA] is that plaintiffs are required to utilize the

elaborate administrative scheme established by the [IDEA] before resorting to

the courts to challenge the actions of the local school authorities."  <u>N.B. v.</u>

<u>Alachua Cnty. Sch. Bd.</u>, 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting <u>Ass'n for</u>

<u>Retarded Citizens v. Teague</u>, 830 F.2d 158, 160 (11th Cir. 1987)).

16

The Eleventh Circuit has noted four main reasons for requiring the exhaustion of administrative remedies: "1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." N.B., 84 F.3d at 1378-79. Nonetheless, the Eleventh Circuit has stated that the exhaustion requirement is not jurisdictional and therefore "is not to be applied inflexibly." Id. at 1379 (citations omitted). Therefore exhaustion of "administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate." Id. (citations omitted).

Jones relies upon the Eleventh Circuit's decision in M.T.V. v. DeKalb Cnty Sch. Dist., 446 F.3d 1153 (2006) as support for her contention that Third-Party Plaintiffs' claims against her are futile because they did not first exhaust those claims in the administrative hearing below. Jones was not a party to the administrative hearing. Appellants in M.T.V. argued that "the School District and various individual defendants retaliated against them for asserting M.T.V.'s rights under the IDEA, and [brought] claims based on Section 1983, the ADA,

17

Section 504, the IDEA, and the First Amendment."  <u>Id.</u> at 1157.  The Eleventh

Circuit affirmed the district court's dismissal of the claims, noting that

"retaliation claims are subject to the IDEA's exhaustion requirement, and

Appellants neither exhausted their administrative remedies nor established they

were excused from doing so."  <u>Id.</u>  The Court relied upon its earlier decision in

<u>Babicz v. Sch. Bd. of Broward Cnty.</u>, 135 F.3d 1420, 1422 n.10 (11th

Cir.1998), in which it held that "any student who wants 'relief that is available

under' the IDEA must use the IDEA's administrative system, even if he invokes

a different statute."  <u>M.T.V.</u>, 446 F.3d at 1158.  In <u>Babicz</u>, the Court held that

"claims asserted under Section 504 and/or the ADA are subject to Section

1415(f)'s requirement that litigants exhaust the IDEA administrative procedures

to obtain relief that is available under the IDEA before bringing suit under

Section 504 and/or the ADA."  135 F.3d at 1422.

       In <u>M.T.V.</u> the appellants argued that because IDEA does not allow

parents to file actions for retaliation against themselves, the relief they seek is

not "relief that is available under" the IDEA, and therefore should not be

subject to the statute's exhaustion requirements.  The Court noted that the

IDEA's broad complaint provision affords the "opportunity to present

complaints with respect to *any* matter *relating* to the justification, evaluation, or

18

educational placement of the child, or the provision of a [FAPE] to such child."
446 F.3d at 1158 (emphasis in original) (quoting 20 U.S.C. § 1415(b)(6)).
Furthermore, even before its decision in M.T.V., the Eleventh Circuit had noted
that litigants cannot "avoid the exhaustion requirement simply by asking for
relief that administrative authorities [cannot] grant," such as money damages."
N.B., 84 F.3d at 1379.

Finding that the retaliation claims clearly related to M.T.V.'s evaluation
and education, the Court in M.T.V. held that the claims were subject to the
exhaustion requirement.  446 F.3d at 1158-59.  The Court then found that
M.T.V.'s parents did not request a due process hearing with respect to their
retaliation claims, and therefore did not exhaust their administrative remedies.
Id. at 1159.  Further, they failed to show that their non-compliance with the
IDEA's exhaustion requirements should be excused.  Id.  The burden of
demonstrating the futility or inadequacy of the administrative proceeding is on
the party seeking exemption from the exhaustion requirement.  Id. (citing Honig
v. Doe, 484 U.S. 305, 327, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)).  The Court
found that "M.T.V.'s parents' speculative allegations of futility and inadequacy
simply fail to sustain" their burden.  Id.

Jones argues that like the parents in <u>M.T.V.</u> who failed to exhaust their administrative remedies in regards to their retaliation claim, Third-Party Plaintiffs in the present case have also failed to exhaust their administrative remedies in regards to their ADA, Section 1983, and First Amendment claims against Jones, and therefore those claims are futile.  (Dkt. [120] at 3).  Jones was not a party to the due process hearing.  (<u>Id.</u> at 2).  Furthermore, at the due process hearing Plaintiffs specifically reserved its claims under the ADA and Section 1983 from adjudication by the ALJ.[3]  (<u>Id.</u> at 3).

Another district court in the Eleventh Circuit recently discussed the efficacy of an attempt to reserve claims for adjudication in a court of general trial jurisdiction, rather than in an IDEA administrative proceeding.  <u>G.J. v. Muscogee Cnty Sch. Dist.</u>, __ F. Supp. 2d __, 2010 WL 1257532 (M.D. Ga.

---

[3] Plaintiffs' Due Process Hearing Request states:
Plaintiffs have raised claims pursuant to [IDEA], implementing federal regulations, state education law and Georgia [IDEA] special education regulations.  Plaintiffs specifically reserve constitutional and other statutory claims including claims triable by jury under Section 504 of the Vocational Rehabilitation Act of 1973, as amended, the [ADA] . . . , and under the Georgia and United States Constitutions pursuant to 42 U.S.C. § 1983, and all other applicable state and federal causes of action, all reserved for full adjudication in a Court of general and trial jurisdiction . . . Plaintiffs specifically reserve claims as to abuse, assault and battery.  Plaintiffs do not consent to the binding or limiting adjudication of facts relevant to such claims in the [IDEA], hearing procedures, nor to the application of any deference to such claims.
(Dkt. [120] at 3).

March 25, 2010).  In the due process complaint in <u>G.J.</u>, "[p]laintiffs did not make any claims with regard to the non-IDEA causes of action.  Rather, [p]laintiffs attempted to reserve "any and all claims, including claims under federal and state law, and claims seeking relief not available under [IDEA] for adjudication in court on appeal."[4] <u>Id.</u> at *11.  The Court noted:

> Plaintiffs argue that they are not required to exhaust their non-IDEA claims, contending that the IDEA's requirements for a due process complaint and Georgia's model form for filing complaints do not say anything about pleading or proving non-IDEA causes of action . . . .  Also, citing a regulation that permits an OSAH ALJ to consolidate hearings under IDEA and Section 504, Ga. Comp. R. & Regs. § 160-1-3-.07, Plaintiffs assert that "[t]here is no known administrative jurisdiction under Georgia law for any Non-IDEA claim except for [the] Section 504 claim." . . . However, Plaintiffs' Section 504, ADA, and § 1983  claims are all closely connected to their IDEA claims, and they seek, among other things, relief that is available under IDEA. Therefore, Plaintiffs must exhaust their non-IDEA claims in state administrative proceedings.  <u>M.T.V.</u>, 446 F.3d at 1158. They may not "reserve" their non-IDEA claims-which seek relief available under IDEA-even though they also ask for relief that an ALJ cannot grant. N.B., 84 F.3d at 1379. Because Plaintiffs expressly refused to exhaust their administrative remedies with regard to the non-IDEA claims by attempting to "reserve" them and because it is not yet clear that the relief they seek will not be granted through the administrative process, the Court grants [the school district's] motion to dismiss the non-IDEA claims without prejudice as premature at this time.

---

[4] Counsel for plaintiffs in <u>G.J.</u> is also the counsel for Third-Party Plaintiffs in this action.  <u>G.J.</u>, 2010 WL 1257532.

Id. at *12.

Plaintiffs argue that Jones fails to reconcile her argument that no IDEA claim can exist against her (Dkt. [92-1] at 12) with the argument that the amendment should not be allowed because Plaintiffs failed to exhaust IDEA administrative remedies as to Jones (Dkt. [121] at 3-4).  (Dkt. [122] at 3).  The crux of Plaintiffs' response to Jones's argument as to failure to exhaust administrative remedies is that an individual cannot be a party to the IDEA administrative proceeding and therefore, it is impossible to exhaust administrative remedies against an individual.  Plaintiffs contend that the OSAH ALJ has no jurisdiction over claims against individuals.  (Dkt. [122] at 4 (citing GDOE R. & Reg. § 160-4-7-.12)).  The Rules and Regulations of the Georgia Department of Education state that "[t]he impartial due process hearing is designed to provide a parent or [local educational agency] an avenue for resolving differences" over services provided to a child with a disability, but does not refer to any other individual parties to the due process hearing.  GDOE R. & Reg. § 160-4-7-.12(3).  The definition for "local educational agency" ("LEA") includes "a public board of education or other public authority constituted within a State for either administrative control or direction of" public schools, but makes no reference to individuals.  20 U.S.C. §

1401(19)(A).

In support of the argument that an individual is not a proper party before a Georgia IDEA administrative proceeding, Plaintiffs ask the Court to take judicial notice of a recent ruling from a Georgia OSAH ALJ.[5]  (See Dkt. [150]). The ruling is a one-page order, which states in relevant part:

> [T]his Tribunal knows of no authority granting it jurisdiction in an IDEA dispute over [an individual], in her individual capacity. First, this administrative tribunal hears contested cases between individuals and state agencies.  See O.C.G.A. § 50-13-41.  Absent special regulation or statute, this Tribunal has no jurisdiction over disputes between private individuals.  See O.C.G.A. § 50-13-1, *et seq.*  Second, IDEA contemplates hearings between state or local educational agencies and the parents of children with disabilities. See 20 U.S.C. §§ 1415(f)(1)(A) & (f)(1)(B)(ii); see also 34 C.F.R. §§ 300.507 & 300.508.

(Exh. A, Dkt. [150-1]).  Third-Party Defendants Stokes and Jones argue that this Court should not take judicial notice of the ALJ Order because: 1) there is nothing to indicate the procedural posture of the underlying case and the parties do not have access to the underlying pleadings; 2) the ALJ's order in a different matter is not binding upon this Court and must be contrasted against the Eleventh Circuit's precedent in M.T.V.; and 3) Defendant Stokes was materially harmed by S.F.'s failure to exhaust administrative remedies against

---

[5] The Order was in G.M. v. Troup Cnty. Sch. Dist., OSAH-DOE-SE-1034017-141 (July 16, 2010).  (Ex. A, Dkt. [150-1]).

AO 72A
(Rev.8/82)

her, because she testified at the administrative proceeding below without notice that she would later be named a defendant.  (See Dkt. [157 & 158]).

First, knowledge of the procedural posture of the underlying IDEA administrative proceeding or access to the pleadings in that matter cannot change the fact that as a matter of law, the OSAH ALJ does not have jurisdiction over an individual defendant in an IDEA matter.  Second, the ALJ's order in that matter is certainly not binding on this Court, but that fact alone does not prevent the Court from taking judicial notice of the order pursuant to Federal Rule of Evidence 201.  Rule 201 governs judicial notice of adjudicative facts, and such a fact must be "one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Neither Defendant Stokes nor Defendant Jones point to any evidence that questions the accuracy of the ALJ's interpretation of Georgia law, the U.S. Code, or federal regulations.[6]  Finally, the Court appreciates the potential prejudice to Defendant Stokes of having testified at the administrative proceeding below without knowing that she would later be named a defendant in a civil action.  However, Stokes's situation

---

[6] Specifically, O.C.G.A. § 50-13-41, O.C.G.A. § 50-13-1, *et seq.*, 20 U.S.C. §§ 1415(f)(1)(A) & (f)(1)(B)(ii), and 34 C.F.R. §§ 300.507 & 300.508.

AO 72A
(Rev.8/82)

is similar to that of a non-party individual deposed by a plaintiff in an action, and later named a party to the action.  Therefore, Third-Party Plaintiffs' First Motion for Order to Take Notice of Decision of Georgia OSAH on its Jurisdiction [150] is **GRANTED**.

Having accepted that a Georgia OSAH ALJ does not have jurisdiction over an individual defendant in an IDEA administrative proceeding, the Court must nonetheless reconcile the holding of M.T.V. if Third-Party Plaintiffs' argument that their claims are not futile for failure to exhaust administrative remedies is to prevail.  The parents in M.T.V. brought claims not only against a school district, but also against individual defendants.  In stating that the parents failed to exhaust their administrative remedies, the Eleventh Circuit did not distinguish between the school district and individual defendants.  M.T.V., 446 F.3d at 1159.  However, the question the Eleventh Circuit asked was "whether Appellants exhausted their administrative remedies *or* were excused from doing so."  Id. (emphasis added).  In that case, the parents also "fail[ed] to show their non-compliance with the IDEA's exhaustion requirement should be excused." Id.  The Court found that the "parents' speculative allegations of futility and inadequacy simply fail to sustain this burden."  Id.  The showing made by Third-Party Plaintiffs in this action demonstrates that it would be futile to name

AO 72A
(Rev.8/82)

individual defendants in the Georgia administrative proceeding.  As noted above, a Georgia OSAH ALJ does not have jurisdiction over an individual defendant in an IDEA proceeding.  Therefore, naming individual defendants in the administrative proceeding does not serve the purpose behind the exhaustion requirement, of permitting the exercise of agency discretion and expertise, and allowing a full development of technical issues and factual record prior to court review.  Furthermore, there is no indication that relief against an individual defendant is "relief that is also available under" the IDEA.  20 U.S.C. § 1415(l).

G.J., 2010 WL 1257532, is also distinguishable.  The only defendant in that case was a local school district, over which a Georgia OSAH ALJ has clear jurisdiction.  In this case, like in G.J., Third-Party Plaintiffs attempted to reserve their non-IDEA claims from adjudication in the administrative proceeding, and have asserted them against the school district as counterclaims in this action.  The question of whether S.F. and his parents had an obligation to exhaust their administrative remedies in regards to AISS has not been put before this Court.  If the Court were evaluating that question, the same one that the district court addressed in G.J., it would likely reach the same conclusion.  However, the present question as to exhaustion relates to individual defendants only.  To the extent that Third-Party Plaintiffs had an obligation to exhaust administrative

remedies under the IDEA against Third-Party Defendants Jones and Stokes, they are excused from doing so.

ii.    ADA Claim

Third-Party Plaintiffs, in Count II of their Proposed Amended Complaint Against Jones [117-2], assert an ADA retaliation claim.  They allege that Jones intended to "chill and limit the exercise of protected rights of advocacy and speech" by S.F. and his parents because they sought to redress concerns about services provided to their disabled child and to seek adequate services and accommodations for him.

Plaintiffs allege that such actions were taken due to S.F.'s status as a child with disabilities and his parents' status as individuals advocating for accommodations for their disabled child.  (Id. at ¶ 75).  The anti-retaliation provision of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

Third-Party Plaintiffs cite Shotz v. City of Plantation, 344 F.3d 1161, 1167-1180 (11th Cir. 2003) as support for their argument that the ADA

27

"prohibits retaliation by any person, including any individual."  (Dkt. [171-2] at
¶ 80).  Third-Party Defendant Jones argues that "Shotz is inapplicable to the
instant matter because it did not involve the IDEA and thus the exhaustion
requirement was not at issue" . . . . and because "it is wholly distinguishable
from the case at bar."  (Dkt. [120] at 8 (emphasis omitted)).

     In Shotz, the individual defendants argued that plaintiff's ADA
retaliation claim was "not cognizable because individuals cannot be held liable
under the Act's anti-retaliation provision."  344 F.3d at 1165.  The question
addressed by the Eleventh Circuit in that decision was "whether private
individuals may sue under Section 12203 to redress retaliation by other
individuals, where the conduct opposed is made unlawful by Subchapter II of
the ADA concerning public services."  Id. at 1166.  In answering this question,
the Eleventh Circuit examined the text and plain meaning of the provision, its
legislative history and purpose, and gave due deference to the Department of
Justice ("DOJ") under Chevron .[7]  Id. at 1167-1180.  The Eleventh Circuit
concluded that the DOJ's interpretation that Section 12203 rendered
"individuals acting in their individual capacities amenable to private suit,"
survived the appropriate threshold of judicial scrutiny and was also a reasonable

_____

[7]  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-
43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (2001).

AO 72A
(Rev.8/82)

interpretation of the ADA's anti-retaliation provision.  Id. at 1178-80.  The

Court also concluded that "[t]he text of Section 12203 sets out both rights- and

duty-creating language, and we cannot say that Congress intended to preclude

individual liability based on the remedies available under Title VI."  Id.  Thus,

the Court held that "an individual may be sued privately in his or her personal

capacity for violating Section 12203 in the public services context."  Id. at

1180.

Jones states that, "Plaintiffs ask this Honorable Court to give a broad

construction to Shotz which exceeds the facts under which that case was

decided."  (Dkt. [120] at 9).  In Shotz, the plaintiff was an expert on ADA

requirements who was asked by a city council member to determine whether a

recently built community center complied with the ADA.  344 F.3d at 1164.

His inspection found various violations, which he detailed in a letter to the city

council member that requested the inspection, who later disseminated the letter

to others.  Id.  A city official subsequently initiated an investigation into the

plaintiff's background, the findings of which were released to the media by

another city council member.  Id. at 1165.  The plaintiff filed suit against the

city and individual defendants alleging, among other things, violation of the

ADA's anti-retaliation provision.  Id.

Jones asserts that "<u>Shotz</u> dealt with the unusual situation in which an individual, who was not otherwise covered by the ADA or IDEA, was retaliated against because of an inspection report listing ADA deficiencies in a building." (Dkt. [120] at 9-10 (emphasis omitted)).  The fact that Shotz was not disabled or bringing a claim based on his own disabilities, but that S.F. is disabled, is a distinction without a difference.  There is nothing in the language of the ADA's anti-retaliation provision that limits the private right of action created by it to an individual with a disability.  If that were the case, S.F.'s parents would not have a cause of action under the ADA, regardless of the defendant.  The question addressed by the Eleventh Circuit in <u>Shotz</u> was not who could bring an ADA anti-retaliation claim, but rather against whom such a claim could be brought, and the Court clearly held that "an individual may be sued privately in his or her personal capacity for violating Section 12203 in the public services context."  344 F.3d at 1180.

While the Eleventh Circuit has not addressed this issue on facts similar to those of the present action, another court has.  <u>Alston v. District of Columbia</u>, 561 F. Supp. 2d 29 (D.C.D.C. 2008).  The court in <u>Alston</u> relied upon the reasoning of <u>Shotz</u> to conclude that an individual defendant could be held liable for taking adverse actions against a mother who sought reasonable

30

accommodations in the provision of educational services to her daughter.  Id. at
40-42.  For these reasons, Plaintiffs ADA retaliation claims against Jones are
not futile.

> iii.    Section 1983 Claims

Section 1983 "purports to create a damages remedy against every state
official for the violation of any person's federal constitutional or statutory
rights."  Kalina v. Fletcher, 522 U.S. 118, 123, 118 S. Ct. 502, 139 L. Ed. 2d
471 (1997).  In order to prevail on a civil rights action under Section 1983,
Plaintiffs must demonstrate that they were deprived of a federal right by a
person acting under color of state law.  Griffin v. City of Opa-Locka, 261 F.3d
1295, 1303 (11th Cir. 2001).  However, Section 1983 "'is not itself a source of
substantive rights,' but merely provides 'a method for vindicating federal rights
elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 272, 114 S. Ct. 807,
127 L. Ed. 2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3,
99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  Therefore, the first step in a Section
1983 action is to identify the specific constitutional right allegedly infringed.
Albright, 510 U.S. at 272.

Third-Party Plaintiffs appear to state three sources for their claims arising
under Section 1983.  First, S.F.'s parents assert that they have a liberty interest

in directing the educational services received by S.F., and that Jones's alleged

actions deprived them of this interest in violation of the Fourteenth

Amendment.  (Dkt. [117-2] at 13).  Second, S.F. asserts that his liberty interest

in his personal integrity was violated by Jones's alleged physical and verbal

abuse.  (Id.).  Finally, both S.F. and his parents assert that Jones's actions

deprived them of their First Amendment rights to freedom of speech and to

petition the government for redress of grievances.  (Id. at 15-16).

### a.  Parents' Liberty Interest

The Fourteenth Amendment states that no State shall "deprive any person

of life, liberty, or property, without due process of law."  U.S. Const., amend.

XIV, § 1.  The Fourteenth Amendment's due process clause "guarantees more

than fair process."  Washington v. Glucksberg, 521 U.S. 702, 719, 117 S. Ct.

2258, 138 L. Ed. 2d. 772 (1997).  The due process clause also contains a

substantive component that "provides heightened protection against government

interference with certain fundamental rights and liberty interests."  Id. at 720.

The clause also protects the "liberty of parents and guardians to direct the

upbringing and education of children under their control."  Pierce v. Soc'y of

Sisters, 268 U.S. 510, 534-535, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (striking

down compulsory education law); see also Troxel v. Granville, 530 U.S. 57, 65-

66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (affirming mother's right to control paternal grandparents' visitation rights as to child); Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526, 32 L.Ed. 2d 15 (1972) (striking down compulsory high school attendance requirement for Amish children); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (striking down law that forbade teaching in any language other than English).  The Supreme Court has also stated that "[p]arents and guardians play a significant role in the IEP process."  Schaffer v. Weast, 546 U.S. 49, 53, 126 S. Ct. 528, 532 163 L. Ed. 2d 267 (U.S. 2005).  Nonetheless, S.F.'s parents, fail to point to any case that stands for the proposition that they have a constitutional interest in the delivery of special education services to their child or that physical or verbal abuse by a child's teacher, in and of itself, violates a constitutionally protected right of a parent.

The Supreme Court in Winkelman v. Parma City Sch. Dist. did state that "parents have a recognized legal interest in the education and upbringing of their child."  550 U.S. 516, 528-29, 127 S. Ct. 1994 (2007) (citing Pierce, 286 U.S. at 534-35 and Meyer, 262 U.S. at 399-401).  However, this case does not arise under the substantive due process clause of the Fourteenth Amendment or involve Section 1983.  Therefore, it is not dispositive or even instructive as to

33

the present action.  Construing the complaint in the light most favorable to the

Plaintiffs, the Court does not find that a constitutional right was violated by

Jones in regards to S.F.'s parents, therefore any Section 1983 claim by them

based upon a violation of their liberty interest protected by the Fourteenth

Amendment is futile and is dismissed.

b.  S.F.'s Liberty Interest

Third-Party Plaintiffs allege that Jones's verbal and physical abuse of

S.F. was deliberate in nature and resulted in severe mental and physical injuries

to S.F.  (Dkt. [117-2] at ¶ 14).  Plaintiffs have clearly set forth a cause of action

for assault and battery under state law, but the question before the Court is

whether their allegations are actionable under Section 1983 as a violation of the

substantive due process clause of the Fourteenth Amendment.  Both the

Eleventh Circuit and the Supreme Court have stated that the Fourteenth

Amendment is not a "'font of tort law' that can be used, through section 1983,

to convert state tort claims into federal causes of action." Neal v. Fulton Cnty.

Bd. of Educ., 229 F.3d 1069, 1074 (11th Cir. 2000) (citing Cnty. of Sacramento

v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  Both

Courts have also "been reluctant to expand the concept of substantive due

process because guideposts for responsible decisionmaking in this uncharted

34

area are scarce and open-ended." Id. (quoting Collins v. City of Harker

Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)).

Nonetheless, the Eleventh Circuit has stated that "a student-plaintiff alleging

excessive corporal punishment can *in certain circumstances* assert a cause of

action for a violation of his rights under the Fourteenth Amendment's Due

Process Clause." Id. (emphasis in original).  The question posed to this Court is

whether Jones's conduct "can properly be characterized as arbitrary or

conscience shocking, in a constitutional sense." Lewis, 523 U.S. at 847.

Not all intentional harm or conduct that amounts to an intentional tort

under state laws "will rise to the level of a substantive due process violation . . .

." Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir

2003).  Such conduct will only amount to a constitutional violation if it "shocks

the conscience." Id.  "[C]onduct intended to injure in some way unjustifiable

by any government interest is the sort of official action most likely to rise to the

conscience-shocking level." Lewis, 523 U.S. at 849.

In cases involving a physical injury inflicted upon a student, the Eleventh

Circuit has stated that the first inquiry is to determine whether the school

official's conduct constitutes corporal punishment.  Neal, 229 F.3d at 1072.

While the Eleventh Circuit has not precisely defined "corporal punishment," it

noted that "[t]he touchstone of corporal punishment in schools appears to be the application of physical force by a teacher to punish a student for some kind of school-related misconduct." Id. (citing Ingraham v. Wright, 430 U.S. 651, 661, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).  In analyzing "corporal punishment" cases, the Court noted that:

> Many corporal punishment cases involve what might be called traditional applications of physical force, such as where school officials, subject to an official policy or in a more formal disciplinary setting mete out spankings or paddlings to a disruptive student[7] . . . . . Not all corporate punishment cases arise under those circumstances, however, and may involve less traditional, more informally-administered and more severe punishments.[8]

Id.  Physical force used by a teacher against a student has been considered

---

[7] Citing Saylor v. Bd. of Educ., 118 F.3d 507, 511 (6th Cir. 1997); Fee v. Herndon, 900 F.2d 804, 806 (5th Cir. 1990); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 562 (8th Cir. 1988); Garcia v. Miera, 817 F.2d 650, 653 (10th Cir. 1987); Hall v. Tawney, 621 F.2d 607, 609 (4th Cir. 1980).

[8] Citing London v. Dirs. of DeWitt Pub. Schs., 194 F.3d 873, 875 (8th Cir. 1999) (school official's acts of dragging student across room and banging student's head against metal pole described as corporal punishment); P.B. v. Koch, 96 F.3d 1298, 1300 (9th Cir. 1996) (school principal's conduct in hitting student in mouth, grabbing and squeezing student's neck, punching student in chest, and throwing student headfirst into lockers was corporal punishment actionable as a constitutional violation); Metzger v. Osbeck, 841 F.2d 518, 519-20 (3d Cir. 1988) (school official's conduct consisting of grabbing student in chokehold and causing student to lose consciousness and fall to the pavement resulting in student breaking his nose and fracturing teeth analyzed under corporal punishment framework); Carestio v. Sch. Bd. of Broward Cnty., 79 F. Supp. 2d 1347, 1348 (S.D. Fla. 1999) (school employees' conduct in ganging up on student and beating him described as corporal punishment); Gaither v. Barron, 924 F. Supp. 134, 135-36 (M.D. Ala. 1996) (teacher's head-butting of student described as corporal punishment).

36

corporal punishment under a broad range of facts.  However, construing the

Proposed Amended Complaint in the light most favorable to S.F., it does not

appear that Jones's beating of S.F. was "the application of physical force by a

teacher to punish a student for some kind of school-related misconduct."  Neal,

229 F.3d at 1072.

Plaintiffs allege that Jones's classroom was a hostile environment in

which she antagonized and belittled S.F.  They allege that this emotional and

mental abuse caused him to begin crying on October 21, 2008.  (Dkt. [117-2] at

¶ 34).  In response to his crying, Jones allegedly lifted S.F. by his pants and beat

him.  (Id.).  In none of the cases examined by the Eleventh Circuit in Neal was

the type of  "school-related misconduct" that precipitated a response from the

teacher or other school authority akin to crying.  See Saylor, 118 F.3d at 508

(student engaged in fight); Fee, 900 F.2d at 805 (student became disruptive in

class); Wise, 855 F.2d at 562 (students continued to play "dodge ball" after

being instructed to stop); Garcia, 817 F.2d at 652-53 (student hit another

student and alleged that teacher kissed father of another student); Hall, 621 F.2d

607 (basis for paddling not discussed); London, 194 F.3d at 875 (student

engaged in "horseplay" and refused to leave cafeteria); P.B., 96 F.3d at 1299-

1300 (involved three students: one for saying "Heil Hitler;" another for talking

37

during memorial service; and third for wearing hat after being told to take it off); <u>Metzger</u>, 841 F.2d at 519 (student used inappropriate language); <u>Carestio</u>, 79 F. Supp. 2d at 1348 (student had verbal altercation with school security); <u>Gaither v. Barron</u>, 924 F. Supp. at 135 (M.D. Ala. 1996) (student failed to respond when asked to turn around).

Since Jones's beating of S.F. does not constitute corporal punishment, the Court must determine the appropriate analysis to apply in such an instance. However, as the Eleventh Circuit has recently noted, it "has yet to articulate the analysis that applies when a school official's use of force does not constitute corporal punishment." <u>T.W. v. Sch. Bd. of Seminole Cnty.</u>, 610 F.3d 588, 599 (11th Cir. 2010).  The "shocks the conscience" standard is still applicable, but the Court has not determined the precise analysis to be employed in evaluating whether the use of force by a school official rises to that level.  <u>Id.</u>   In <u>T.W.</u>, the Court held that "it is inconceivable that tripping a student [for a non-disciplinary purpose]  and causing the student to stumble, without more, violates the Constitution."  <u>Id.</u>

While the Eleventh Circuit has yet to delineate the precise analysis to be used in this context, this Court will utilize the guidance it does provide in its corporal punishment cases to determine whether Jones's conduct rises to the

38

conscience-shocking level in a non-corporal punishment context.  In the

corporal punishment context, the Eleventh Circuit considers the totality of the

circumstances in determining whether the amount of force used is obviously

excessive.  Neal, 229 F.3d at 1075.  In particular, the Court has examined: "(1)

the need for the application of corporal punishment, (2) the relationship

between the need and amount of punishment administered, and (3) the extent of

the injury inflicted."  Id. (citing Metzger, 841 F.2d at 520).  In citing Metzger,

the Court quotes the portion of the Third Circuit's opinion which also lists as a

factor "whether force was applied in a good faith effort to maintain or restore

discipline or maliciously and sadistically for the very purpose of causing harm."

Id. (quoting Metzger, 841 F.2d at 520).

       In this case, there can be no justified "need" to beat S.F. because he was

crying in response to being verbally abused and antagonized by Jones.

Plaintiffs allege that S.F. was beaten "because S.F. had been exhibiting

behaviors of his condition of autism, which Jones found annoying, and done

due to his status as a child with a disability . . . ."  (Dkt. [117-2] at ¶ 34).  As

alleged by Plaintiffs, the use of force only further exacerbated S.F.'s state of

distress.  (Dkt. [101] at ¶ 259).  In this case, the extent of the injury inflicted

included not only "severe physical injury" including "significant marks and

bruises," but also "emotional and behavioral injuries," causing "increasing behavioral and emotional regression." (Dkt. [117-2] at ¶¶ 45, 59). Finally, there is no indication that "force was applied in a good faith effort to maintain or restore discipline," but rather is alleged by Plaintiffs to have been applied "maliciously and sadistically for the very purpose of causing harm." Neal, 229 F.3d at 1075 (quoting Metztger, 841 F.2d at 520). Plaintiffs' allegation that Jones asked other adults to leave the room before hitting S.F. would support their argument that it was not done for a legitimate purpose. (Dkt. [117-2] at ¶ 32).

In regards to the psychological injury allegedly suffered by S.F., the Eleventh Circuit has "never considered whether corporal punishment that causes only psychological injuries can amount to a violation of substantive due process." T.W., 610 F.3d at 601. In T.W., the Court "[a]fter considering the totality of the circumstances, including T.W.'s psychological injuries," concluded that the conduct did not shock the conscience of the Court. The Court did however note that "we can imagine a case where an exercise of corporal punishment--even one that causes only psychological injur--'might be so severe that it would amount to torture equal to or greater than'" physical abuse alone. Id. at 601-02 (quoting Abeyta v. Chama Valley Indep. Sch. Dist.,

77 F.3d 1253, 1258 (10th Cir. 1996)).  First, if this may be the case in a corporal punishment context, it is even more likely to be the case in an instance such as this which does not involve corporal punishment.  Second, in addition to the physical injuries, Plaintiffs also allege that Jones, well aware of S.F.'s autism and verbal limitations, openly ridiculed S.F. and his parents, allowed S.F. to eat from the garbage, threatened S.F. with the use of physical force while aware S.F. did not understand the purpose of such use of force, and discussed grossly inappropriate matters in his presence, causing psychological trauma to S.F. (Dkt. [117-2] at ¶ 12, 25, 27-29, 30, 42).  Plaintiffs allege that S.F. was afraid to be in his classroom, became increasingly agitated and anxious, and regressed behaviorally.  (Id. at ¶ 43).  This Court cannot say that as a matter of law, the combination of Jones's physical and mental abuse against an autistic ten-year-old child does not rise to the conscience-shocking level.  As the Supreme Court has noted, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.  Therefore, S.F.'s substantive due process claim against Jones is not futile and the Proposed Amended Complaint is proper as to this cause of action.

c.  First Amendment Claim

Count I of Third-Party Plaintiffs Proposed Amended Complaint [117-2]
is entitled Section 1983 Claims.  Count I does not clearly delineate how Jones's
actions violated S.F. or his parents' rights guaranteed by the First Amendment.
However, keeping in mind this Court's obligation to construe the complaint in
the light most favorable to Plaintiffs when considering a motion to dismiss, the
Court will endeavor to ascertain the basis of Plaintiff's claims.   Allegations that
could be related to a First Amendment claim include that Jones's actions "were
taken to chill the Plaintiffs exercise of protected rights and that Jones's
"maintenance of her silence, caused or was a causation factor in depriving S.F.
access to appropriate services."  (Dkt. [117-2] at ¶¶ 62, 71).

Plaintiffs in their Brief in Support of Their Motion to Amend [117-1]
appear to limit their First Amendment argument to the Petition Clause of the
First Amendment, stating:

> These allegations [of retaliation and chill] establish the
> Constitutional right, interest and first amendment protection for
> petitioning government for redress of grievances, the explicit
> personal actions of Jones . . . , the relationship to the known
> advocacy including motive, opportunity, the temporal time
> relationship to the advocacy and direct actions with intent to chill
> and stop the inquiries, adverse actions from the chill to S.F., and to
> his placement and availability of services, and his and to his
> parents damage by this conduct.

42

(Dkt. [117-1] at 16).  While it is not entirely clear what Plaintiffs intend to convey in this sentence, it does appear that they are asserting that Jones's actions interfered with their ability to petition government for the redress of grievances.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const., amend. I.  The Petition Clause of the First Amendment "protects people's rights to make their wishes and interests known to government representatives in the legislature, judiciary, and executive branches."  Biddulph v. Mortham, 89 F.3d 1491, 1496 (11th Cir. 1996).

The cases cited by Plaintiffs in their brief, unfortunately, do not involve the Petition Clause.[9]  See Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004) (involving Speech Clause); Riley v. National Fed'n of the Blind, 487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988) (involving Speech Clause); Dickerson v. U.S, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d. 405 (2000) (examining Miranda warning); Lee v. Weisman, 505 U.S. 577, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (1992) (concerning Establishment Clause); Rakovich v. Wade, 819 F.2d 1393 (7th Cir. 1987), rev'd on other grounds, 850 F.2d 1393

_____

[9] Plaintiffs do not cite any case law in support of this claim in their Reply Brief. (See Dkt. [122] at 13-14).

7th Cir. 1987) (concerning retaliation based on speech); <u>Youren v. Tintic</u>, 343

F.3d 1296 (10th Cir. 2003) (concerning free speech).  While the Court has an

obligation to construe Plaintiffs' Complaint in the light most favorable to them,

it does not have an obligation to state Plaintiffs claim for them in a legally

cognizable manner.  To the extent Plaintiffs seek to amend their complaint

against Jones to state a First Amendment Claim it is futile because Plaintiffs

have failed as a matter of law to state a legally cognizable violation of rights

guaranteed by the First Amendment.

        iv.    State Law Claims

Jones does not state that Third-Party Plaintiffs have failed to state a claim

as a matter of law in regards to their claims of assault, battery, and intentional

infliction of emotional distress, but rather that the Court should dismiss the

remaining claims for lack of jurisdiction.  (Dkt. [92-1] at 16-17; Dkt. [120] at

21-22).  Jones's argument is based on the premise that Plaintiffs have failed to

state as a matter of law any claims that arise under the Constitution, laws or

treaties of the United States such that jurisdiction would be proper under 28

U.S.C. § 1331, and that the Court should not exercise supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 on the basis of Third-Party Plaintiffs

counterclaims against Plaintiff AISS.  As the Court has noted above, Plaintiffs

have properly alleged claims under the ADA and Section 1983, therefore the Court does have jurisdiction pursuant to 28 U.S.C. § 1331 and will exercise supplemental jurisdiction over Plaintiffs' state law claims for assault, battery, and intentional infliction of emotional distress because they arise out of the same nucleus of operative facts as Plaintiffs' federal law claims.

Third-Party Plaintiffs' Motion to Amend the Complaint as Against Jones [117] is **GRANTED**, **in part**, and **DENIED**, **in part**.  To the extent S.F.'s parents seek to state a substantive due process claim for their violation of their liberty interests, that attempt is futile and their Section 1983 claim based on this ground is **DISMISSED**.  Third-Party Plaintiffs attempt to state a First Amendment violation as a basis for a claim under Section 1983 is also futile and such a claim is **DISMISSED.**  Third-Party Plaintiff may proceed on the remaining claims in the Proposed Amended Complaint.  Third-Party Defendant Jones's Motion to Dismiss [92] is **DENIED, as moot**, and Third-Party Plaintiffs' First Motion for Order to Take Notice of Decision of Georgia OSAH on its Jurisdiction [150] is **GRANTED**.

**IV.    Third-Party Defendants Stokes's Motion to Dismiss [64] and Third-Party Plaintiffs' Motion to Amend the Complaint as Against Stokes [124]**

        A.    <u>Proposed Amended Complaint</u>

45

The Court set forth the standard for allowing an amended complaint in Section III.A above and will not repeat it here.[10]  Third-Party Plaintiffs' Proposed Amended Complaint [124-1] raises a claim under the ADA not raised in the original complaint.  The amendment restates the Section 1983 claim and re-pleads the state law claims for slander, slander *per se*, and intentional infliction of emotional distress.

Third-Party Defendants Stokes challenges Plaintiffs' attempt to amend their original complaint, alleging that the proposed amendment prejudices the defendants, follows an undue delay, and is futile.  The question of futility will be addressed in Section IV.B. below.  Regarding the other two grounds, Stokes first argues that Plaintiffs waited over ten months from the commencement of the action against AISS before seeking to amend the complaint against Stokes and that no new facts have come to light as to Stokes's actions in that interim period.  (Dkt. [139] at 2, 6).  While Plaintiffs have certainly delayed filing an amended complaint, the question is whether this amounts to undue delay.  See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981) ("[M]ere

---

[10]Stokes filed a Motion to Dismiss [64] the original Third-Party Complaint [Dkt. No. 5-1].  To the extent Third-Party Plaintiffs re-plead claims from the original Third-Party Complaint in the Proposed Amended Complaint, the Court has considered the briefs of the parties related to the Motion to Dismiss.  However, in light of the filing of the Amended Complaint, the Motion to Dismiss [64] the original Third-Party Complaint is **Denied, as moot**.

passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment).  In the instant action, discovery has yet to begin as to Third-Party Plaintiffs claims against Stokes.  (See Dkt. [126] at 7 (staying discovery pending ruling on motion to dismiss)).  While Stokes argues that the amendment will prejudice her, given that discovery has yet to begin in this action and given that this is Plaintiffs' first attempt to amend the complaint, the Court does not find that any prejudice to Stokes outweighs the directive of Rule 15 to "freely give leave when justice so requires."  Stokes cites Manhattan Const. Co. v. McArthur Elec., Inc., as a case in which a district court denied leave to amend as a result of delay and prejudice to the defendants. 2007 WL 2713250 (N.D. Ga. Sept. 14, 2007).  However, in that case the plaintiff had missed the deadline for filing a motion to amend by seven months and the motion came only one month before the close of fact discovery.  Id. at *2.  Such is not the case in this action.  The Court does not find that Plaintiffs' amendment follows undue delay or will unduly prejudice Stokes.  To the extent that the Proposed Amended Complaint is not futile, it will be allowed.

      B.      Sufficiency of the Proposed Amended Complaint

Stokes argues that Plaintiffs have failed to exhaust their administrative remedies.  For the reasons discussed in Section III.C.i. above, to the extent

Plaintiff was required to exhaust administrative remedies against Stokes, they are excused from doing so.

> i.    State Law Claims

> > a.    Slander and Slander *Per Se*

Third-Party Plaintiffs allege that at an IEP meeting held in November 2008, "Stokes accused C.F. and M.F. of committing a felony by placing [a] recording device on S.F." and referred to the recording as a "felonious recording."  (Dkt. [124-1] at ¶ 31).  Plaintiffs assert that "[t]he statements imputing and accusing C.F. and M.F. of a felony and felonious acts were untrue;" that the statements "were [made] with personal malice and were made intentionally;" and that the statements were made "to punish and deflect the inquiry into the abuse of S.F. and to the inappropriate condition of his educational program."  (Id. at ¶¶ 66-67).  Plaintiffs assert that because Stokes's statements suggested that S.F.'s parents committed criminal acts, under Georgia law such statements are slander *per se*.  (Id. at ¶ 73).  However, in addition, the statements also gave rise to special damages and therefore constitute slander. (Id.).

The Georgia Code states that "[s]lander or oral defamation consists in: (1) [i]mputing to another a crime punishable by law . . . or (4) [u]ttering any

disparaging words productive of special damage which flows naturally therefrom." O.C.G.A. § 51-5-4(a).  "To be actionable as slander, an oral communication must be both false and malicious." Fink v. Dodd, 286 Ga. App. 363, 367, 649 S.E.2d 359, 363 (Ga. Ct. App. 2007) (citing Williams v. Trust Co., 140 Ga. App. 49, 50, 230 S.E.2d 45 (Ga. Ct. App. 1976)).  "Because falsity is an essential element of both libel and slander, truth is a perfect defense to a defamation action." Cmty. Newspaper Holdings, Inc. v. King, 299 Ga. App. 267, 269, 682 S.E.2d 346, 348 (Ga. Ct. App. 2009).  Stokes argues that "S.F.'s defamation claim against [her] should be dismissed since C.F.'s actions were in fact unlawful."  (Dkt. [134] at 11).

The Georgia Code makes it unlawful for "[a]ny person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversations of another which shall originate in any *private place*." O.C.G.A. § 16-11-62(1) (emphasis added).  The Code defines a "private place" as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." O.C.G.A. § 16-11-60(4).  The Code does not prevent a person who is either a party to the conversation or a person who has received the prior consent of a party to the conversation from "intercepting a wire, oral, or electronic communication."

49

O.C.G.A. § 16-11-66(a).  The Code also makes it unlawful for anyone other than law enforcement officers to possess any eavesdropping device.  O.C.G.A. § 16-11-63(a).  "Eavesdropping device" is defined as "any instrument or apparatus which by virtue of its size, design, and method of operation has no normal or customary function or purpose other than to permit the user thereof secretly to intercept, transmit, listen to, or record *private conversations of others*."  O.C.G.A. § 16-11-63(b) (emphasis added).

Third Party-Plaintiffs state that "[o]n October 21, 2008 C.F. sewed the digital recorder into S.F.'s collar, set it and turned it on to record S.F.'s school day."  (Dkt. [124-1] at ¶ 27).  This would constitute an "eavesdropping device" if it permitted "the user thereof . . . secretly to . . . record private conversations of others."  O.C.G.A. § 16-11-63(b).  As an initial matter, the Court must determine who the "user" of the digital recorder was.  None of the parties argue that S.F. was the user of the device, and the Proposed Amended Complaint appears to suggest that the user was C.F.  (Dkt. [124-1] at ¶ 27).  Given that C.F. was the user of the recording device, the question then becomes whether the device allowed her to record the private conversations of others.  As noted above, it is not illegal for a party to a conversation or an individual receiving prior consent from such party to intercept the conversation.  See O.C.G.A. § 16-

50

11-66(a).  C.F. did not accompany S.F. to school on October 21, 2008 and was not a party to any of the conversations recorded by the device sewn into S.F.'s collar.  However, had S.F. given her consent to record the entirety of his school day, perhaps C.F.'s conduct would not have violated O.C.G.A. § 16-11-62.

As noted in the Proposed Amended Complaint, S.F. was a non-verbal ten-year-old boy with autism at the time of the recording. (Dkt. [124-1] at ¶ 14). Therefore, S.F. did not have the capacity to consent to his mother's recording of his school day, and there is no indication that he knew of the presence of the digital recorder or understood what its purpose was.  Georgia law does recognize a parent's ability to vicariously consent to the recording of a child's conversations, but only in limited circumstances, and only when the recording occurs within the family home.[11]  Here the recording was not made in the family home, but in S.F.'s classroom.  Since C.F. was not a party to the private conversations being recorded and because S.F. could not consent to the recording, the device used to make the recording is an "eavesdropping device"

---

[11] "The provisions of this article shall not be construed to prohibit a parent or guardian of a child under 18 years of age, with or without the consent of such minor child, from monitoring or intercepting telephonic conversations of such minor child with another person by use of an extension phone *located within the family home*, or electronic or other communications of such minor child *from within the family home*, for the purpose of ensuring the welfare of such minor child."  O.C.G.A. § 16-11-66(d) (emphasis added).

as defined by the Georgia Code.  C.F.'s possession of the eavesdropping device

is a felony under Georgia law.  O.C.G.A. § 16-11-69.  In addition, the recording

of the conversations of another that originate in a private place also constitutes a

felony.  Id.  An adult or child in a classroom may have no expectation that

conversations that occur therein will not be heard by others in the classroom,

however they are "entitled reasonably to expect to be safe from casual or hostile

intrusion or surveillance."  O.C.G.A. § 16-11-60(4).

Truth being the "perfect defense to a defamation action," Third-Party

Plaintiffs' Proposed Amended Complaint [124-1] is futile to the extent it states

a claim for slander or slander *per se* against Stokes.  Claims against Stokes for

slander and slander *per se* are **DISMISSED**.

b.    Intentional Infliction of Emotional Distress

Third-Party Defendant Stokes's only argument against Third-Party

Plaintiffs intentional infliction of emotional distress claims, is that the claims

are subject to dismissal because Stokes is protected by official immunity for her

actions.  Official immunity "offers limited protection from suit to governmental

officers and employees."  Gilbert v. Richardson, 264 Ga. 744, 750, 452 S.E.2d

476, 481 (Ga. 1994).  The doctrine of official immunity "provides that while a

public officer or employee may be personally liable for his negligent ministerial

acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority."  Id. at 752, 482; see also Ga. Const., Art. I, Sec. II, Par. IX(d) (employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions").

The Court must first determine whether Stokes's acts were ministerial or discretionary.  The Georgia Tort Claims Act defines "discretionary function or duty" as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."  O.C.G.A. § 50-21-22(2).  The manner in which Stokes carries out her supervision over and response to S.F.'s education program, along with her actions at the November 2008 IEP meeting all required that she choose among alternate courses of action, likely based upon a consideration of social, political, or economic factors.  Even though Stokes's actions were discretionary in nature, she may still be denied official immunity if she acted with actual malice or actual intent to cause injury.

AO 72A
(Rev.8/82)

In the context of official immunity, "'actual malice' requires a deliberate intention to do wrong." Merrow v. Hawkins, 266 Ga. 390, 391, 467 S.E.2d 336, 337 (Ga. 1996). The Georgia Supreme Court has rejected

> the position that proof of "ill will" is itself enough to establish actual malice under [the Georgia Constitution]. Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.

Adams v. Hazelwood, 271 Ga. 414, 415, 520 S.E.2d 896, 898 (Ga. 1999). While Plaintiffs seek to use Stokes's accusation that they committed a felony as part of the basis for their emotional distress claim, as noted above, that statement was true, and therefore cannot constitute a wrongful or illegal act. However, Plaintiffs' emotional distress claim is also based on Stokes's "failure to investigate and seek to review the recording or education records or source of regression and injury" to S.F., causing "severe emotional distress." (Dkt. [124-1] at ¶ 77). Plaintiffs allege that Stokes's actions were willful and arose from personal malice towards Plaintiffs and were intended to harm Plaintiffs. (Id. at ¶ 79). The illegal or wrongful act Plaintiffs appear to allege that Stokes intended was the continued deprivation of the education services to which S.F.

was legally entitled.  Because Plaintiffs have alleged that Stokes intended to commit a wrongful or illegal act, Stokes is not entitled to official immunity.

A determination of whether the allegations regarding Stokes's intent have any merit is better left for consideration on a motion for summary judgment and not at the motion to dismiss stage.  Since Stokes has not set forth any other reason Plaintiffs' intentional infliction of emotional distress claim should be considered futile, the Court will allow Plaintiffs to proceed with the claim at this stage of the action.

ii.    ADA Claim

Third-Party Plaintiffs ADA claim for retaliation against Stokes is based upon her accusation that S.F.'s parents committed a felony by making a "felonious recording."  (See Dkt. [124-1] at ¶¶ 53-61).  As noted above, the Eleventh Circuit has held that "an individual may be sued privately in his or her personal capacity for [retaliation] in the public services context."  Shotz, 344 F.3d at 1179.  However, Stokes asserts that Plaintiffs have failed to set forth a *prima facie* ADA case.  In order to establish a *prima facie* ADA case, "a plaintiff must show that (1) she engaged in statutorily protected expression: (2) she suffered an adverse . . . action; and (3) the adverse action was causally related to the protected expression.  Id. at 1180 (quoting Weeks v. Harden Mfg.

Corp., 291 F.3d 1307, 1311 (11th Cir. 2002)).  By seeking modifications in the

special education services being provided to S.F., his parents were engaged in

expression protected by the ADA.  However, there is no evidence they suffered

an adverse action.

The ADA claim set forth by S.F.'s parents is based upon Stokes's

allegation that they committed a felony by recording his school day.  S.F.'s

parents were never investigated or prosecuted for violating any Georgia law in

relation to the recording.  Therefore, if they suffered an adverse action, it must

be the allegation that they committed a felony.  Even assuming that the

allegation was false and constituted defamation, it is not clear that such an

allegation is sufficient to constitute an adverse action sufficient to state an ADA

retaliation claim.  Prior to the Eleventh Circuit's decision in Shotz, it had only

examined ADA retaliation claims in the employment context.  Shotz, 344 F.3d

at 1180.  Determining whether an action is sufficiently adverse requires a case-

by-case analysis using both an objective and subjective standard.  Id. at 1181

(quoting Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).  As

a general rule, "[a]n ADA plaintiff must demonstrate that a reasonable person in

his position would view the . . . action in question as adverse." Id. (quoting Doe

v. DeKalb Cnty. Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998)).

A reasonable person may view being falsely accused of a crime as adverse, even if no prosecution was taken or attempted for the allegedly illegal acts. The Eleventh Circuit has warned of setting the bar for what constitutes an adverse action too high to avoid the risk of chilling legitimate opposition to unlawful and discriminatory practices. Id. at 1182 (quoting Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998)). However, this Court need not reach that question, because under the present facts S.F.'s parents were not falsely accused of committing a felony as their act of surreptitiously recording S.F.'s school day did constitute a felony. Accusing someone of committing a criminal act that they actually committed cannot be considered under any standard to be an adverse action. "Although a plaintiff's burden in proving a *prima facie* case is light, [judgment as a matter of law] is appropriate if he fails to satisfy any one of the elements of a *prima facie* case." Id. at 1180 (quoting Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432-33 (11th Cir. 1998)). Having failed to demonstrate that an adverse action was taken against them, Plaintiffs' ADA claim against Stokes is futile and must be **DISMISSED**.

iii.     Section 1983 Claims

Plaintiffs dedicate only one paragraph in their Proposed Amended Complaint to setting forth Constitutional claims against Stokes.  That paragraph in its entirety states:

> Plaintiffs were engaged in protected activities, and the actions of Stokes and statements made, and refusals to investigate the recording and subsequent actions and failures of her actions were in response to and to chill and retaliate for that activity and the further exercise of such rights.  They breached protected rights to seek redress and to petition.  Such actions were objectively unreasonable and it was clearly established that such actions were improper and contrary to Plaintiffs constitutionally protected rights.  These actions give rise to a claim for nominal, compensatory and punitive and/or aggravated damages in violation of constitutionally protected rights, pursuant to Section 1983 in such amounts as to be set in the enlightened conscience of the jury.

(Dkt. [124-1] at ¶ 64).  Plaintiffs also do not reassert any of the preceding paragraphs of the Proposed Amended Complaint in regards to this claim.

Plaintiffs attempt to set forth a retaliation claim against Stokes based upon the Petition Clause of the First Amendment.  Plaintiffs' attempted First Amendment claim against Stokes suffers from the same infirmities as their attempted First Amendment claim against Jones, discussed in Section III.C.iii.c above.  Plaintiffs have failed to assert a legally cognizable First Amendment

58

violation and therefore their Section 1983 claim against Stokes is futile and must be **DISMISSED**.

## V.      Bifurcation of Claims

Federal Rule of Civil Procedure 42 allows the Court to order a separate trial of third-party claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  The basis for this litigation is an appeal of the due process hearing in which Third-Party Plaintiffs challenged the adequacy of the services provided to S.F. by AISS.  Neither Jones nor Stokes was a party to the administrative proceeding, and the Court's review of that proceeding will generally be limited to the record generated below.  A full and complete airing of the claims by Third-Party Plaintiffs against Jones and Stokes will require broader discovery and different and/or additional evidence than will be required for the Court to review the ALJ's findings in the administrative proceeding.  Therefore, the Court **ORDERS** the third-party claims **SEVERED** from the other claims in this action for the purposes of trial.

This severance of claims will allow a speedier resolution of the issues between AISS and S.F., M.F., and C.F.  Discovery as to the third-party claims has been stayed pending the Court's ruling on Jones's and Stokes's Motions to Dismiss.  Having ruled on those Motions in this Order, discovery on those

claims shall commence.  To the extent that information garnered in the

discovery already undertaken between AISS and Defendants can be used with

the third-party claims, such information should be utilized to avoid unnecessary

expense and duplication of efforts.  Discovery as to the third-party claims

should not be used to hamper the resolution of the underlying claims between

AISS and Defendants.

**Conclusion**

Defendants' First Motion for Summary Judgment [48] is **GRANTED**

and Defendants Motion in Limine [130] is **GRANTED**.  Third-Party Plaintiffs'

First Motion for Order to Take Notice of Decision of Georgia OSAH on its

Jurisdiction [150] is **GRANTED**.

Third-Party Plaintiffs' Motion to Amend the Complaint as Against Jones

[117] is **GRANTED, in part**, and **DENIED, in part**.  To the extent S.F.'s

parents seek to state a substantive due process claim for their violation of their

liberty interests, that attempt is futile and their Section 1983 claim based on this

ground is **DISMISSED**.  Third-Party Plaintiffs attempt to state a First

Amendment violation as a basis for a claim under Section 1983 is also futile

and such a claim is **DISMISSED.**  Third-Party Plaintiff may proceed on the

remaining claims in the Proposed Amended Complaint.  Third-Party Defendant

AO 72A
(Rev.8/82)

Jones's Motion to Dismiss [92] is **DENIED, as moot**, and Third-Party

Plaintiffs' First Motion for Order to Take Notice of Decision of Georgia OSAH

on its Jurisdiction [150] is **GRANTED**.   Third-Party Defendant Jones's

Motion for Oral Argument [162] is **DENIED**.

      Third-Party Plaintiffs S.F. et al.'s Motion to Amend the Complaint as

Against Defendant Stokes [124] is **GRANTED**, **in part**, and **DENIED**, **in**

**part**.  Plaintiffs' claim against Stokes for intentional infliction of emotional

distress may proceed.  The other claims in Plaintiffs' Proposed Amended

Complaint [124-1] are futile and therefore are **DISMISSED**.  Third-Party

Defendant Gwendolyn Stokes's Motion to Dismiss [64] is **DENIED**, **as moot**.

Finally, the third-party claims are hereby **SEVERED** for purposes of trial.  The

discovery stay applicable to these claims is hereby lifted, and discovery may

now proceed.

      **SO ORDERED**, this  16th  day of September, 2010.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)