IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTA INDEPENDENT SCHOOL SYSTEM,<br><br>    Plaintiff,<br><br>v.<br><br>S.F., a minor, by and through his parents and next friends, M.F., and C.F., and M.F. and C.F. Personally,<br><br>    Defendants,<br>    Counterclaimaints, and<br>    Third-Party Plaintiffs,<br><br>v.<br><br>GWENDOLYN STOKES and SHERRI JONES,<br><br>    Third-Party Defendants. | CIVIL ACTION NO.<br>1:09-CV-2166-RWS |

**ORDER**

This case comes before the Court on Defendants' First Motion for the Court to Reconsider its Dismissal of the Slander and Slander *Per Se* Amendments and Claims ("Defendants' Motion for Reconsideration") [192], AISS's Motion for Reconsideration and to Alter, Amend or Vacate Order and

Judgment ("Plaintiff's/AISS's Motion for Reconsideration") [205], and Third-Party Defendant Jones' Motion to file Sur-Reply [211].  After considering the record, the Court enters the following order.  As an initial matter, Third-Party Defendant Jones' Motion to file Sur-Reply [211] is **DENIED**.

## Background

The underlying action arises from allegations that the Atlanta Independent School System ("AISS") denied S.F. a free and appropriate public education ("FAPE") and violated the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-1491.  (Amended Complaint, Dkt. No. [75] at ¶ 3).  The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs . . ." 20 U.S.C. § 1400(d)(1)(A).  If the parents of a disabled child are dissatisfied with their child's individualized education program ("IEP"), the IDEA requires the educational agency to afford them an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  S.F.'s parents, dissatisfied with S.F.'s IEP, sought a due process hearing.

An administrative hearing was held in the Georgia Office of State Administrative Hearings ("OSAH") from March 9-13, 2009.  (Dkt. No. [75] at

2

¶¶ 7, 15).  On May 11, 2009, the Administrative Law Judge ("ALJ") issued a final order ("Final Order"), finding, among other things, that AISS failed to provide FAPE to S.F., that his school placement by AISS was not appropriate, and that S.F. will not receive an appropriate education from AISS going forward. (Id. at ¶ 8; see Final Order, Dkt. No. [75-1]).  The ALJ ordered that:

> S.F. shall receive one year of compensatory education to be provided at the end of the Plaintiffs [*sic*] educational entitlement and further, that Plaintiffs shall be reimburse[d] by AISS for privately provided services and private assessments in the amounts stipulated at trial for the two (2) years prior to the filing of their Complaint through the 2008-2009 school year, including, but not limited to direct services, related services, and transportation or travel services.

(Dkt. No. [75-1] at 26).  The ALJ also ordered that "S.F.'s prospective placement for the remainder of his educational entitlement shall be in a private school at the Summit Learning Center," and that AISS shall pay for the placement as well as supplementary educational services for S.F.  (Id.).

Any party aggrieved by the result of the administrative proceedings in the state system has the right to bring a civil action in the district court.  20 U.S.C. § 1415(i)(2)(A).  Plaintiff has filed the current action to appeal the ruling of the ALJ.  Defendants have filed a Counterclaim against AISS, as well as a Third

Party Complaint against Gwendolyn Stokes, AISS's special education compliance coordinator and Sherri Jones, S.F.'s classroom teacher.

## Discussion

### I. Motions for Reconsideration

AISS and Defendants have each filed Motions for Reconsideration [192, 205] asking the Court to reconsider portions of its September 16, 2010 Order [179].[1]  Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa.  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). However, a motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259.  Furthermore, "[a] motion for reconsideration is not an opportunity for the moving party . . . to

---

[1] Defendants' Motion [192] addresses this Court's dismissal of its slander and slander *per se* claims against Third-Party Defendant Gwendolyn Stokes.  (See Order of 9/16/10, Dkt. [179] at 48-52). AISS's Motion [205] addresses this Court's holding regarding Defendants' Motion for Summary Judgment [48]. (See Order of 9/16/10, Dkt. [179] at 6-12).

4

instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

A.  Defendants' Motion [192]

In this Court's September 16, 2010 Order [179], the Court dismissed Defendants' slander and slander *per se* claims against Third-Party Defendant Gwendolyn Stokes. Defendants assert that the Court committed clear error on the following grounds: (1) that the classroom does not constitute a "private place," and therefore the recording of conversations in S.F.'s classroom does not fall within the purview of O.C.G.A. § 16-11-62; (2) that Georgia law inherently allows C.F. and M.F. to consent to the recording on S.F.'s behalf; and (3) that C.F.'s actions do not constitute eavesdropping because Georgia law allows the "reasonable surveillance" of others when the welfare of a child is at stake.

Regarding Defendants' first argument, the Court previously ruled that while an adult or child in a classroom may have no expectation that conversations that occur therein will not be heard by others in the classroom, they are entitled reasonably to remain free from the surveillance and recording of those conversations. (See Dkt. [179] at 52). The statute governing unlawful

5

eavesdropping and surveillance prohibits the recording of private conversations or activities in a "private place," defined as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." O.C.G.A. §§ 16-11-60, -62.  Georgia courts have indicated that an analysis of the reasonableness of such an expectation should be governed by the same principles as privacy protections under the Fourth Amendment.  See Quintrell v. State, 231 Ga. App. 268, 270, 499 S.E.2d 117 (1998) ("In discerning the scope of the statutory meaning of 'private place,' we ascribe the same scope as has been given to the Fourth Amendment protections.").  Under that analysis, an individual must possess a subjective expectation of privacy that society is prepared to recognize as reasonable.  State v. Delvechio, 301 Ga. App. 560, 562, 687 S.E.2d 845 (2009).[2]

---

[2] Defendants imply that a determination of whether a classroom constitutes a private place is a question of fact to be left to a jury.  (See Dkt. [192-1] at 5). However, Defendants cite no Georgia authorities specifically on point, and the Court has found none.  Moreover, under federal constitutional law, the objective reasonableness of an individual's expectation of privacy is a legal question for the court, while the question of whether the individual has manifested a subjective expectation of privacy is a question of fact reserved for the jury.  See U.S. v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989).  Since the Georgia Court of Appeals has indicated that the reasonableness inquiry is the same under both section 16-11-60 and the Fourth Amendment, it is consistent with Georgia jurisprudence to determine as a matter of law whether the classroom constitutes a private place.

6

In the present case, the expectation of AISS staff, students, and parents was shaped by the AISS policy prohibiting intrusive surveillance within its classroom. This policy stated that "No student shall photograph, videotape, record, or reproduce . . . any student or staff member while on school system premises without the express prior permission of the student or staff member." (Dkt. [183-6]). The unrebutted testimony of Constance Goodson indicates that this policy applied to all AISS students. (Dkt. [183-2] at 82:8-82:16). Moreover, the classroom in question was populated by disabled students with intensive and highly personal needs, including academic, social, emotional, behavioral, and hygienic needs. Given these circumstances, the policy sufficiently supports a reasonable expectation on the part of parents, students, and staff that AISS students would, at the very least, remain free from having their activities and conversations recorded. Cf. City of Ontario v. Quon, --- U.S. ----, 130 S. Ct. 2619, 2630, 177 L. Ed. 2d 216 (2010) (noting, in the context of an employer policy limiting the privacy extended to company personal communication devices, that "employer policies concerning communications will of course shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated").

7

Moreover, C.F. sewed a recording device into S.F.'s clothes and recorded his activities and surrounding conversations throughout the day, without discrimination as to the nature of any particular place or person (e.g. use of the restroom, etc.) to be recorded. The Court of Appeals of Georgia has found that such continuous monitoring of both private and non-private areas and activities within an otherwise public facility constitutes the invasion of a private place. See Johnson v. Allen, 272 Ga. App. 861, 864-65, 613 S.E.2d 657 (2005) (finding that continuous observation of private matters occurring in a restroom would constitute an invasion of privacy, even if a stall in a public restroom would not be considered a private place when used for other than its intended purpose).

The authority Defendants cite does not demonstrate clear error in such a ruling. The presence of a school policy prohibiting the recording and surveillance of students and teachers distinguishes the present case from Thompson v. State, which involved the recording of an interrogation taking place in a police station at the consent of one party, or Quintrell, which involved the videotaping of illegal bear hunting in an open field. See Quintrell, 231 Ga. App. at 270, 499 S.E.2d at 119; Thompson v. State, 191 Ga. App. 906, 907, 383 S.E.2d 339 (1989). While the present case likewise involves a

8

publicly-accessible area rather than a private home, the anti-surveillance policy provides an additional reason justifying an expectation of privacy that the recorded individuals in <u>Thompson</u> and <u>Quintrell</u> lacked.  As such, these decisions fail to unequivocally show that the AISS classroom should not be considered a "private place" under Georgia law.  Given this absence of any authority demonstrating a clear error by the Court, the Court finds none in its previous holding.

Defendants also urge the Court to reconsider its holding that Georgia law recognizes a parent's ability to vicariously consent to the recording of a child's conversations only in limited circumstances.  In its previous order, the Court noted that Georgia law provides parents only a narrow right to consent to the recording of a child's telephonic conversations that occur within the family home.  O.C.G.A. § 16-11-66(d).  Here again, Defendants point to no authority that demonstrates clear error.

Defendants argue that Georgia law provides parents with an inherent right to consent on behalf of their children to the recording of the child's conversations with others.  Defendants further assert that Section 16-11-66(d) should properly be read as restricting that general consent authority with respect to telephonic conversations alone, while leaving parents free to vicariously

9

consent to the recording of private conversations in other contexts. (See Dkt. [192-1]at 22 n.3.) In support of this contention, Defendants cite to several Georgia statutes giving parents the power to consent to their children's medical care or drug and alcohol treatment and to inspect their child's records without the child's consent. (See Dkt. [192-1] at 20-21).

However, this assertion is contradicted by Georgia case law. In Bishop, the Court of Appeals held that parents were prohibited from vicariously consenting to interceptions of their children's telephone calls. See Bishop v. State, 241 Ga. App. 517, 522, 526 S.E.2d 917 (1999) ("Bishop I"). The court noted in Bishop that the Georgia eavesdropping and surveillance act was originally introduced with a parental consent provision, which was removed during the legislative process. See id. After Bishop, the statute was subsequently amended in order to provide for parental consent in the specific situation at issue in that case, i.e., the interception and recording of telephone conversations to which a child is a party. Bishop v. State, 252 Ga. App. 211, 212, 555 S.E.2d 504 (2001) ("Bishop II") (applying statute retroactively). Had the parents in Bishop I possessed the inherent authority under Georgia law to consent to the recording of any conversation to which the child was a party, such an amendment to the statute would have been unnecessary.

10

AO 72A
(Rev.8/82)

Therefore, section 16-11-66(d), rather than functioning as a limitation on some pre-existing parental right to consent on behalf of the child, is more properly read as a narrow grant of authority for parents' consent to the recording of their child's conversations by a specific means (telephonic conversations) and in a specific location (the family home). Outside of those narrow circumstances, the broader ban on the recording of another person's private conversation without the consent of that person remains in effect. See O.C.G.A. § 16-11-62(1). As such, the Court finds no clear error in its interpretation of O.C.G.A. § 16-11-66.

Finally, Defendants cite no authority supporting the contention that Georgia law provides a "child welfare" exception to O.C.G.A. § 16-11-63, which governs unlawful use of eavesdropping devices. No case relied upon by Defendants even addresses Georgia's eavesdropping statute. See Anderson v. Mergenhagen, 283 Ga. App. 546, 552, 642 S.E.2d 105 (2007) (finding a triable issue as to whether following and photographing complainant amounted to an invasion of her privacy); Ellenberg v. Pinkerton's, 130 Ga. App. 254, 256-57, 202 S.E.2d 701 (1973) (discussing the reasonableness of wife's surveillance of a residence from a public road to investigate her husband's disability claim); Bodrey v. Cape, 120 Ga. App. 859, 867, 172 S.E.2d 643 (1969) (finding no

11

violation of common-law right to privacy in husband's observing wife's house from a parked car due to concerns about welfare of his child). Therefore, Defendants have provided no basis for the Court to reconsider its ruling on this issue.[3]

As such, Defendants' Motion [192] to reconsider the Court's previous order dismissing Defendants' claims of slander and slander *per se* is **DENIED**.

B.     Plaintiff's Motion [205]

In this Court's September 16, 2010 Order [179], it granted Defendants' First Motion for Summary Judgment [48], finding that AISS could not seek reimbursement for payments for S.F.'s private services that occurred after the date of the ALJ's Final Order. Plaintiff's Motion for Summary Judgment specifically dealt with the following contention set forth in AISS's Complaint: "Defendants C.F. and M.F. are required to reimburse AISS for AISS's payments for S.F.'s private services *since the date of the ALJ's Final Order*." (Dkt. [75] at 49 (emphasis added); see also Dkt. [48-2] ("S.F. *et. al.* bring this

---

[3]The result reached by the Court may seem harsh in light of the allegations in this case. The Court is sympathetic to the desires of parents to protect their children, especially when the child has limited ability to communicate. However, the Court reaches the conclusion based on the law, as the Court understands it. This law strikes a balance which seeks to protect legitimate privacy interests. A consideration of all of the facts in the case compels a conclusion that the actions at issue infringed on privacy interests the law seeks to protect.

12

First Motion for Summary Judgment on their "stay put" or "maintenance of placement rights.")).  To be clear, this Court's September 16, 2010 Order does not address the separate holding in the Final Order that "Plaintiffs shall be reimburse[d] by AISS for privately provided services and private assessments in the amounts stipulated at trial for the two (2) years prior to the filing of their Complaint through the 2008-2009 school year."[4]  (Dkt. [75-1] at 26). Defendants assert that no payments have been made to them by AISS under this holding of the Final Order, they have not sought these payments because the ALJ's decision does not conclude this action as it is currently being appealed in this Court, and therefore AISS has no basis to seek reimbursement.  If AISS is to obtain an outcome in this Court, such that this holding of the Final Order is no longer valid, then they will not owe Defendants payment for private services provided for the two years prior to the filing of Defendants Complaint. However, as set forth in this Court's September 16, 2010 Order [179] and

---

[4] The ALJ's holding concerning "reimbursement" for past private services is contrasted with the holding concerning private services going forward, in which the Final Order states, "[s]aid private school placement shall be paid for by AISS . . . and shall include the provision of [additional private services]," making no reference to reimbursement.  (Dkt. [75-1] at 26).  AISS appears to understand the distinction between the two forms of relief, as it has stated that this Court "should now declare that such a Right to Restitution exists in circumstances *where a school district pays for prospective private placement pursuant to an ALJ Order later found to be erroneous.*"  (Dkt. [212] at 2 (emphasis added)).

13

reiterated below, as a matter of law, AISS is not entitled to reimbursement for payments it has made for private services provided to S.F. since the date of the ALJ's Final Order.

In it's motion for reconsideration AISS now points the Court for the first time to case law that was in existence at the time of this Court's September 16 Order, attempts to repackage previous arguments, and attempts to distinguish cases the Court has already addressed. Since AISS has not directed the Court to "newly discovered evidence," or "an intervening development or change in controlling law," its Motion for Reconsideration [205] can only be successful if needed to "correct a clear error of law or fact." Bryan, 246 F. Supp. 2d at 1258-59.

This Court's Order stated: "AISS has not cited to any case in which parents were ordered to reimburse a school district *for educational expenses an administrative officer ordered the school district to pay* for a child's private educational services following a reversal of the administrative order." (Dkt. [179] at 10 (emphasis added)). AISS states that "[c]ontrary to this Court's understanding at the time of its September 16 Order, there is in fact case law precedent directly on point to the present matter . . . ." Specifically, AISS draws the Court's attention to Dale M. v. Bd. of Educ. of Bradley-Bourbonnais

14

High Sch. Dist. 307, 237 F.3d 813 (7th Cir. 2001). Illinois, the state out of which Dale M. originates, appears to have a two-tier administrative process prior to any appeal to a federal district court. 237 F.3d at 815. The first hearing officer ordered the school district to pay for Dale M.'s private schooling, but a second hearing officer reversed the order of the first. Id. Therefore, in Dale M. the result of the state administrative process was an order that the school system was not required to pay for the student's private placement. Id. The district judge reversed the administrative ruling and ordered reimbursement, which the school district proceeded to pay. Id. The Seventh Circuit reversed the district court's ruling, its judgment in favor of plaintiffs, and the award of attorneys fees to plaintiffs' counsel. Id. at 818. On remand, the district court ordered plaintiffs and plaintiffs' counsel to reimburse the school district for its earlier payments. (Dkt. [205-2]). However, this action is distinguishable from that in Dale M., and AISS's reliance upon that case is misplaced.

First, in Dale M. the result of the state administrative process was a decision that the school district was not responsible for paying for the student's private placement. In contrast, in the present action the ALJ ordered AISS to pay for S.F.'s private placement going forward. This makes all the difference

15

when considering the two different scenarios within the IDEA framework.[5]

IDEA requires

> that once a parents' challenge to their child's IEP succeeds, the school district's consent to the private placement of the child is implied by law, and the maintenance of that placement becomes the responsibility of the school district. Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002) (citing Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (finding that the "stay-put" provision of the IDEA represents "Congress'[s] policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved")). The regulations

---

[5] This distinction was set forth in the Court's September 16, 2010 Order to distinguish a case upon which Plaintiffs relied, and which they attempt to rely on once again:
> [A]s the First Circuit later noted,
>> [t]he posture of [Brookline] . . . was markedly different from this one. In Brookline, the state hearing officer ruled that the Town's proposed IEP, under which it planned to transfer the child from the private school he had been attending for two years at public expense, and reenroll him in a public school with special services, was adequate and appropriate. The parents then rejected the [hearing officer's] decision and appealed to a federal court. By contrast, here the parents maintained [their child] in the [private placement] consistent with the state agency order in their favor. It was the Town that brought suit to reverse the State agency decision.
>
> Town of Burlington v. Dept. of Educ., 736 F.2d 773, 799-800 (1st Cir. 1984).

(Dkt. [179] at 10 (distinguishing the procedural posture of Doe v. Brookline Sch. Comm., 722 F.2d 910 (1st Cir. 1983), from the posture of the present action). AISS's attempt to distinguish Town of Burlington, 736 F.2d 773, from the present action in its motion for reconsideration is not persuasive.

16

>implementing the IDEA state that "[i]f the hearing officer in a due process hearing conducted by . . . a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents . . . ." 34 C.F.R. § 300.518(d). Other courts have also found that a school district has no claim for reimbursement for funds expended on the private placement of a disabled child. See e.g., Henry v. Sch. Admin. Unit. No. 29, 70 F. Supp. 2d 52, 59 (D.N.H. 1999) ("[I]f a local educational agency refused to pay for the proposed interim placement but the parents obtain an order from the state educational agency approving the placement, the school district must pay for the placement from the date of the agency decision, without a right to reimbursement, even if a federal court reviewing the decision later rules in the School District's favor.").

(Dkt. [179] at 8-9). See also Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (holding that "the school district and state [were] responsible for the costs of [the child's] placement during the court review proceedings regardless of which party prevails in [the] appeal"). Second, the Court's reasoning in Dale M. was premised upon the fact that "[a] judgment creditor who pays the judgment pending appeal instead of posting a supersedeas bond (which would automatically stay collection, see Fed. R. Civ. P. 62(d)) is entitled to the return of its money if the decision is reversed . . . ." 237 F.3d at 815. However, there is no indication in Dale M. that this same rule is applicable to a final order resulting from an administrative

17

proceeding. Plaintiff has not drawn the Court's attention to any other precedent that stands for this proposition either.

AISS also asserts that the Spending Clause of the U.S. Constitution supports its claim for reimbursement. However, this argument is also unpersuasive. IDEA does put school districts on notice that if an administrative proceeding brought pursuant to IDEA results in an order requiring a school district to pay for the provision of private services for a student, it is not entitled to reimbursement. "In accepting IDEA funding, States expressly agree to provide a FAPE to all children with disabilities." Forest Grove Sch. Dist. v. T.A. 129 S.Ct. 2484, 2495, 174 L. Ed. 2d 168 (2009) (citing 20 U.S.C. § 1412(a)(1)(A)). Further, "[i]f the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents . . . ." 34 C.F.R. § 300.518(d). Therefore, when a school district pays for the private placement of a student after that relief has been awarded through an administrative proceeding, it is agreeing that the placement is the appropriate provision of FAPE, which the school district has expressly agreed to provide in accepting IDEA funds. Additionally, sufficient constitutional notice can arise

18

from prior case law or agency interpretation, both of which exist in regard to this particular question.  See Jackson v. Birgmingham Bd. of Educ., 544 U.S. 167, 183-184, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

Plaintiffs' Spending Clause argument does not demonstrate "a clear error of law"سufficient to reverse or vacate this Court's earlier holding regarding Defendants' Motion for Summary Judgment.  Therefore, Plaintiffs' Motion for Reconsideration [205] is **DENIED**.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Reconsideration [192] is **DENIED**, AISS's Motion for Reconsideration [205] is **DENIED**, and Third-Party Defendant Jones' Motion to file Sur-Reply [211] is **DENIED**.

**SO ORDERED**, this   23rd   day of November, 2010.

_____
**RICHARD W. STORY**
United States District Judge