**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ATLANTA INDEPENDENT SCHOOL SYSTEM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.F., a minor, by and through his parents and next friends, M.F., and C.F., and M.F. and C.F. Personally, | : | CIVIL ACTION NO. 1:09-CV-2166-RWS |
| | : | |
| Defendants, Counterclaimaints, and Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GWENDOLYN STOKES and SHERRI JONES, | : | |
| | : | |
| Third-Party Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion to Quash [154],

Plaintiff's Motion for Leave to File Sur-reply [175], Defendants' First Motion

to Compel [178], Third-Party Defendant Stokes's Motion to Strike [200],

Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims [215],

Third-Party Defendant Stokes's Motion for Protective Order [226], and Third-Party Defendant Stokes's Motion to Strike [231].

## Background

The underlying action arises from allegations that the Atlanta Independent School System ("AISS") denied S.F. a free and appropriate public education ("FAPE") and violated the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-1491.  (Amended Complaint, Dkt. No. [75] at ¶ 3).  The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs . . ."  20 U.S.C. § 1400(d)(1)(A).  If the parents of a disabled child are dissatisfied with their child's individualized education program ("IEP"), the IDEA requires the educational agency to afford them an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  S.F.'s parents, dissatisfied with S.F.'s IEP, sought a due process hearing.

An administrative hearing was held in the Georgia Office of State Administrative Hearings ("OSAH") from March 9-13, 2009.  (Dkt. No. [75] at ¶¶ 7, 15).  On May 11, 2009, the Administrative Law Judge ("ALJ") issued a final order ("Final Order"), finding, among other things, that AISS failed to

2

provide FAPE to S.F., that his school placement by AISS was not appropriate, and that S.F. will not receive an appropriate education from AISS going forward. (Id. at ¶ 8; see Final Order, Dkt. No. [75-1]).  The ALJ also found that S.F. was injured by an adult as the result of being struck by a hand or object at school in his instructional program on October 21, 2008.  (Dkt. No. [75-1] at 18).  Based upon these findings, the ALJ ordered that:

> S.F. shall receive one year of compensatory education to be provided at the end of the Plaintiffs [sic] educational entitlement and further, that Plaintiffs shall be reimburse[d] by AISS for privately provided services and private assessments in the amounts stipulated at trial for the two (2) years prior to the filing of their Complaint through the 2008-2009 school year, including, but not limited to direct services, related services, and transportation or travel services.

(Dkt. No. [75-1] at 26).  The ALJ also ordered that "S.F.'s prospective placement for the remainder of his educational entitlement shall be in a private school at the Summit Learning Center," and that AISS shall pay for the placement as well as supplementary educational services for S.F.  (Id.).

Any party aggrieved by the result of the administrative proceedings in the state system has the right to bring a civil action in the district court.  20 U.S.C. § 1415(i)(2)(A).  Plaintiff has filed the current action to appeal the ruling of the ALJ.  Defendants have filed a Counterclaim against AISS, as well as a Third

3

Party Complaint against Gwendolyn Stokes, AISS's special education

compliance coordinator and Sherri Jones, S.F.'s classroom teacher.

**Discussion**

I.   **Defendants' Motion to Quash [154] and Plaintiff's Motion for Leave
     to File a Sur-reply [175]**

     Plaintiff's withdrawal of its subpoena to Barry Dickey renders

Defendants Motion to Quash [154] moot, and therefore it is **DENIED**.

Defendants' request for attorney's fees associated with the Motion to Quash are

also **DENIED**.  Plaintiff's Motion for Leave to File a Sur-reply [175] to

respond to the request for attorney's fees is **DENIED**.

II.  **Defendants' Motion to Compel [178]**

     Defendants seek an order compelling AISS to produce: (1) the OIR

investigation documents; (2) the chronology prepared by Arletta Brinson; (3)

the chronology authored by Su Yeager and Joseph Manguno; and (4)

investigation documents prepared by outside counsel.

     A.   Chronology by Arletta Brinson

     On May 19, 2009, Dr. Beverly Hall sent Kathy Augustine an e-mail

requesting "a chronology of when any of your staff members were made aware

of the incident involving the student at the North Metro program.  Include dates,

AO 72A
(Rev.8/82)

the information received as well as any actions taken." (Dkt. [194] at 3). AISS

has raised the attorney-client privilege and work product doctrine with respect

to this chronology, but has produced the chronology [194-3], created by Arletta

Brinson, as an attachment to its Response [194] to Defendants' Motion to

Compel. AISS has redacted portions of the chronology that it claims reference

attorney-client privileged communications and information that is subject to the

attorney work product doctrine. AISS has also redacted five entries from the

chronology that occur after January 14, 2009 -- the date Defendants filed their

due process complaint -- on the grounds that events occurring after the filing of

the due process complaint are not relevant to the question of whether AISS

provided S.F. with FAPE. In a previous Order [151], discussing the topics

identified for the deposition of AISS's agency representative, the Court stated:

> Topics (30) and (33) seek to ascertain the communications of AISS
> representatives, its legal counsel, and Ms. Augustine and Dr. Hall,
> following the ALJ's decision, as well as internal actions and
> statements about the case and the decision. This inquiry is not
> relevant to the issue of whether S.F.'s IEP was appropriate or
> whether he received FAPE. Therefore, AISS's agency
> representative need not testify about Topics (30) and (33).

(Dkt. [151] at 17). In that same Order, the Court granted a protective order

prohibiting Defendants from deposing Dr. Hall because there was no indication

that "Dr. Hall has any personal knowledge relevant to S.F.'s IEP or placement

5

at the North Metro Center.  Her involvement with this action appears to begin

after the ALJ issued his Final Order." (Id. at 19).

　　　　While communications occurring after the ALJ's Final Order may have

no bearing on whether S.F.'s IEP was appropriate or whether he received

FAPE, the same cannot be said for communications that occurred after January

14, 2009, but before the beginning of the due process hearing on March 9,

2009.  Additionally, while Dr. Hall may not have had any personal knowledge

of S.F.'s schooling, the chronology she requested sought to ascertain when

AISS officials became aware of events involving S.F., what information was

obtained, and what actions were taken in response.  To the extent that any of the

entries redacted on pages 9 and 10 of the chronology occurred before March 9,

2009, AISS will provide Defendants with a copy of the chronology without

such redaction.  Additionally, the assertions made by AISS are insufficient to

determine whether any of the redactions on the first 8 pages of the chronology

are appropriately protected by the attorney-client privilege or work product

doctrine.  Therefore, AISS will submit to the Court an unredacted copy of the

Brinson chronology within 7 days of this Order so that the Court may perform

an *in camera* review to determine the validity of the asserted privilege.  If any

6

further disclosure of this chronology is required, the Court will direct AISS accordingly.

B.    Chronology by Su Yeager and Joseph Manguno

AISS contends that there is no separate chronology as to Joseph Manguno, and the chronology created by Su Yeager "is entirely unresponsive to any matters relevant to this litigation" because it "deals solely with responding to the news coverage on the case." (Dkt. [194] at 5.)  If what AISS means by this is that Yeager's chronology is a time line of communications between AISS and the media concerning S.F., then the Court agrees that it would not likely lead to the discovery of any admissible evidence in this action.  However, if Yeager's chronology is a time line of the events of S.F.'s claims created for distribution to media, then such chronology may be relevant.  It is not clear from AISS's Response [194] which is the case.  If it is not the former, a time line of communications between AISS and the media, AISS is ordered to produce the time line to Defendants.

C.    Internal Investigation

First, AISS asserts that there was no investigation conducted by OIR. Rather, AISS hired the law firm of Greenberg Traurig to conduct the investigation.  The affidavit of Janna Satz Nugent, the litigator that conducted

7

the investigation, states that Greenberg Traurig was retained "to conduct an internal investigation related to In re S.F. v. Atlanta Public Schools, Docket No. OSAH-DOE-SE-0918883-60-Gatto, and to provide legal advice and counsel on potential litigation based on the events central to that litigation."  AISS has also belatedly provided a privilege log [194-2] of responsive documents and communications relating to that investigation.  While failure to comply with the requirements of Fed. R. Civ. P. 26(b)(5) may result in a waiver of the work product doctrine, after examining the communications between Counsel for AISS and Defendants concerning discovery relating to the investigation, the Court does not find that the sanction of waiver is appropriate here.  The Court does find that the items identified in the privilege log [194-2] are protected from discovery by Defendants pursuant to the attorney-client privilege and work product doctrine and need not be produced by AISS.

Defendants Motion to Compel [178] is **GRANTED IN PART AND DENIED IN PART**, as set forth above.

### III.   Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims [215]

AISS seeks summary judgment with respect to Defendants' Section 504, ADA, and Section 1983 counterclaims on the grounds that their failure to

8

exhaust these counterclaims at the administrative hearing below acts as an absolute bar to them in this action.  (Dkt. [215-1] at 2).

A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

9

B.    <u>Exhaustion</u>

The IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).  Subsection (f) sets forth the parameters for the impartial due process hearing to which parents or a local educational agency ("LEA") are entitled when a complaint has been filed under the IDEA. 20 U.S.C. § 1415(f)(1)(A).  Subsection (g) applies when the due process hearing is conducted by an LEA, which is not the case here because the hearing was conducted by OSAH.  20 U.S.C. § 1415(g)(1).  The relevant question, therefore, is whether Defendants exhausted the procedures under subsection (f) to the same extent as would be required had the action been brought under the IDEA.

AISS and Defendants disagree as to what is required to meet this exhaustion requirement.  AISS argues that in order to meet the IDEA's

10

exhaustion requirement as to non-IDEA causes of action, a party must specifically allege the non-IDEA causes of action and attempt to resolve those causes of action at the administrative proceeding.  (See Dkt. [215-1] at 5 ("absolutely no mention of Section 504, the ADA, or Section 1983 anywhere in the Due Process Complaint"); Dkt. [215-1] at 5 ("no allegations were ever made during the course of the administrative hearing regarding these claims"); Dkt. [215-1] at 6 (arguing defendants post-trial briefs fail to address any Section 504, ADA, or Section 1983 causes of action)).  Defendants sought to reserve these claims for adjudication in a court of general trial jurisdiction.[1]  (Dkt. [215-3] at 25).  AISS objected to this attempted reservation of claims and the ALJ struck the addendum containing the reservation, stating that it "is not contemplated in

_____

[1] Defendants' Due Process Complaint contained an Addendum, which states in part:

> Plaintiffs have raised claims pursuant to [IDEA], implementing federal regulations, state education law and Georgia [IDEA] special education regulations.  Plaintiffs specifically reserve constitutional and other statutory claims including claims triable by jury under Section 504 of the Vocational Rehabilitation Act of 1973, as amended, the [ADA] . . . , and under the Georgia and United States Constitutions pursuant to 42 U.S.C. § 1983, and all other applicable state and federal causes of action, all reserved for full adjudication in a Court of general and trial jurisdiction . . . Plaintiffs specifically reserve claims as to abuse, assault and battery.  Plaintiffs do not consent to the binding or limiting adjudication of facts relevant to such claims in the [IDEA], hearing procedures, nor to the application of any deference to such claims.

(Dkt. [215-3] at 25-26).

the [IDEA], its implementing regulations, or the Georgia Department of Education's ("GDOE") IDEA regulations."  (Dkt. [215-5]).  To the extent Defendants sought to reserve these claims, that attempt was unsuccessful.

Defendants argue that they in fact litigated all the contentions on all available facts in the administrative hearing and were awarded substantial relief pursuant to the provisions of the IDEA, and therefore have satisfied the IDEA's exhaustion requirement.  (Dkt. [227] at 1, 3).[2]  AISS concedes that the allegations contained in Defendants' Section 504, ADA, and Section 1983 counterclaims "arise from the same set of facts that were adjudicated at the administrative level when the ALJ heard S.F.'s IDEA claim . . . . The claims relate to the same alleged behavior by AISS–that AISS failed to provide adequate and safe educational services to S.F."  (Dkt. [215-1] at 18).  These allegations included those of abuse against S.F.  AISS further states:

> there is no doubt that S.F. et al.'s Section 504, ADA and Section
> 1983 claims relate to their underlying allegations under the IDEA.

---

[2] In the alternative, Defendants argue: (1) that exhaustion would be futile because the GDOE regulations do not allow for a hearing on non-IDEA claims; (2) AISS's procedural safeguards notice, required by 34 C.F.R. § 300.504, is silent as to exhaustion of non-IDEA claims; (3) AISS has waived any argument as to exhaustion; and (4) AISS's assertions in its Complaint [75] and Answer to Defendants' Counterclaims [128] estops any argument as to exhaustion.  Because the Court finds that AISS exhausted its counterclaims to the extent required by the IDEA, it need not address these alternative arguments.

AO 72A
(Rev.8/82)

> In S.F. et al.'s counterclaim, S.F., et al. have two sections that address their claims under Section 504, ADA and Section 1983, however the allegations within these sections are <u>nearly identical</u> to their prior claims under the IDEA.

(<u>Id.</u> at 15 (emphasis in original)).  AISS argues that even though Defendants Section 504, ADA, and Section 1983 claims relate to the same acts that form the basis of Defendants' IDEA claims and that the allegations contained in the counterclaims are "nearly identical" to those already adjudicated in the administrative hearing, Defendants have nonetheless failed to exhaust their administrative remedies as to those claims because they did not specifically allege a Section 504, ADA, or Section 1983 cause of action during the administrative hearing.  Yet neither the plain language of the IDEA nor the Eleventh Circuit's decisions interpreting it, warrant such an outcome.

The Court's July 30, 2010 Order [151] stated:

> Plaintiff argues that Defendants should not be allowed discovery on the basis of their counterclaims, because these claims were not first exhausted in the administrative proceeding.  <u>See</u> 20 U.S.C. 1415(l).  The Court is inclined to agree based upon the Eleventh Circuit's decision in <u>M.T.V. v. DeKalb Cnty. Sch. Dist.</u>, 446 F.3d 1153 (2006).

(Dkt. [151] at 10-11).  However, the Court did not decide the question in that Order.  Similarly, the Court's September 16, 2010 Order [179] discussed the

13

matter of exhaustion but did not need to decide the issue as to Defendants counterclaims.  (Dkt. [179] 16-27).  In that Order, the Court stated:

> The question of whether S.F. and his parents had an obligation to exhaust their administrative remedies in regards to AISS has not been put before this Court.  If the Court were evaluating that question, the same one that the district court addressed in <u>G.J.[ v. Muscogee Cnty Sch. Dist.</u>, 704 F. Supp. 2d 1299 (M.D. Ga. 2010)], it would likely reach the same conclusion.

(Dkt. [179] at 26).  In <u>G.J.</u>, the court held that:

> Because Plaintiffs expressly refused to exhaust their administrative remedies with regards to the non-IDEA claims by attempting to "reserve" them and because it is not yet clear that the relief they seek will not be granted through the administrative process, the Court grants MCSD's motion to dismiss the non-IDEA claims without prejudice as premature at this time.

704 F. Supp. 2d at 1313.  Now, for the first time, the question of Defendants' exhaustion of their counterclaims is squarely before the Court.  Having examined the IDEA and Eleventh Circuit decisions in light of the facts of this action, the Court does not find that Defendants counterclaims are premature, but rather that they exhausted their claims to the extent required by the IDEA.

The IDEA requires "that before the filing of a civil action under [Section 504, the ADA, or Section 1983] seeking relief that is also available under [the IDEA]," the administrative procedure mandated by the IDEA "shall be exhausted to the same extent as would be required had the action been brought

14

under [the IDEA]." 20 U.S.C. § 1415(l). The IDEA's broad complaint provision affords the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). These provisions do not mandate that in seeking relief for allegations that may also constitute violations of Section 504, the ADA, or Section 1983, those statutes must be specifically invoked in an IDEA administrative complaint or hearing. What these provisions do mandate is that if relief is sought pursuant to other Federal statutes and the IDEA may provide relief for the same allegations that form the basis of claims asserted in a later action, those allegations must first be contested through the IDEA's administrative process. "The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." N.B. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting Ass'n for Retarded Citizens v. Teague, 830 F.2d 158, 160 (11th Cir. 1987)). Defendants have done just this and the language of the IDEA and the decisions of the Eleventh Circuit do not require that they have done any more before asserting their counterclaims in this action.

15

In <u>Teague</u>, the plaintiffs sought declaratory and injunctive relief, raising two principal claims: (1) violations of the Education for All Handicapped Children Act ("EHA"), the predecessor to the IDEA, by failing to provide the plaintiffs with FAPE; and (2) violations of the due process clause of the fourteenth amendment of the United States Constitution. 830 F.2d at 159. The plaintiffs made no attempt to employ any state administrative remedies before filing suit, arguing that to do so would be futile. <u>Id.</u> "Perceiving no good reason for plaintiffs' failure to exhaust the available state administrative remedies, the district court granted the defendant's motion for summary judgment." <u>Id.</u> In affirming this decision, the Eleventh Circuit noted that the EHA's exhaustion rule

> serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

<u>Id.</u> at 160 (citations omitted). The Court found that

> [t]he underlying issue-whether defendants were providing the educational facilities and programs to which the handicapped children were entitled-calls out for resolution initially at the administrative level. An examination of defendant's efforts at

16

> educating the handicapped will demand the expertise and
> discretion for which the state agency is especially qualified. Such a
> determination also will require extensive factfinding and expert
> testimony about the present facilities and programs and the needs
> of the handicapped children, and judicial economy would be well
> served by having a state hearing officer develop the record on
> these questions prior to court review. In light of the sweeping
> nature of plaintiffs' claims, an administrative hearing will go far to
> clarify the specific factual and legal matters in dispute.

Id. at 161.

AISS asserts that Defendants counterclaims concern whether "AISS failed to provide adequate and safe educational services to S.F." (Dkt. [215-1] at 18). Like in Teague, the underlying issue in Defendants counterclaims call for initial resolution at the administrative level. Unlike Teague however, Defendants utilized the IDEA's "elaborate administrative scheme." The ALJ undertook extensive factfinding and received expert testimony concerning the needs of S.F. in comparison to the educational program offered to him by AISS. An extensive record has been developed by the ALJ and is available for this Court's review. AISS contends that the allegations contained within Defendants' counterclaims "are nearly identical to their prior claims under the IDEA," the underlying allegations of which the ALJ has already throughly

examined.[3]  Requiring the ALJ to determine whether these same allegations

constitute violations of Section 504, the ADA, and/or Section 1983 -- a task

which appears to lie outside the ALJ's jurisdiction and the scope of the IDEA

administrative proceeding under Georgia law -- does not further any of the four

purposes identified by the Eleventh Circuit as the basis for requiring

exhaustion.[4]  See Teague, 830 F.2d at 160.  The Eleventh Circuit's decisions

after Teague do not suggest that Defendants failed to adequately exhaust their

counterclaims.

        In Doe v. Ala. Dept. of Educ., the defendants argued that "issues

involving the schools violation of the EHA's procedural requirements were not

raised at the due process hearing," and thus the plaintiffs failed to exhaust their

administrative remedies as to those issues.  915 F.2d 651, 659 (11th Cir. 1990).

The Eleventh Circuit noted:

        At the due process hearing, the Does presented four issues for
        consideration: identification of John's handicap, evaluation of the

---

[3] Interestingly though, AISS faults the ALJ for supposedly providing relief for abuse because the findings of abuse "do not arise under the IDEA, and the IDEA does not provide a damage remedy for tortious conduct."  (Dkt. [75] at ¶ 129).

[4] There is nothing in the Georgia Administrative Code section applicable to IDEA dispute resolution that suggests that the impartial due process hearing is an appropriate venue for raising non-IDEA claims.  See Ga. Comp. R. & Regs. § 160-4-7.12.

> handicap and its impact on John's educational program, appropriate
> placement and services for John, and the propriety of the school's
> suspension of John in the spring of 1986. The hearing officer noted
> that the emphasis at the hearing would be on placement and
> services for John; the other issues were, however, properly before
> the hearing officer. Testimony concerning the process the school
> used in identifying John's handicap, in evaluating John, and in
> determining his appropriate educational program was presented at
> the hearing. The closing remarks by the attorneys for both parties
> focused primarily on whether residential placement was required
> for John.

Id.  The hearing officer's final report in the case did not comment on the issue

of procedural violations.  Id.  Nonetheless, the Court concluded that

> the plaintiffs adequately placed before the state hearing officer the
> procedural violation issues. Evidence regarding these alleged
> procedural violations of the EHA was presented at the due process
> hearing. Our review of the administrative record persuades us that
> the procedural violations now asserted were fairly presented before
> the hearing officer. Therefore, we conclude that the [plaintiffs]
> have adequately exhausted their administrative remedies regarding
> these claims, and the district court did not abuse its discretion in
> considering them.

Id. at 660.  In contrast, in Sch. Bd. of Lee Cnty v. M.M., the Eleventh Circuit

affirmed the dismissal of the parents' claims of retaliation and breach of

settlement agreement because they failed to exhaust their administrative

remedies as required by the IDEA.  348 Fed. Appx. 504, 512 (11th Cir. 2009).

In so holding, the Court noted:

19

> Our review of the administrative record shows that the only issues before the ALJ were whether the IEPs at issue had been designed to provide M.M. with a FAPE, and whether the Board violated any procedural safeguards. The Parents do not allege they ever requested a due process hearing with respect to their retaliation claims or to their breach of the Settlement Agreement claim and there is no evidence that these claims were raised before the ALJ. This is insufficient to establish exhaustion.

Id.

In the present action, Defendants' counterclaims "arise from the same set of facts that were adjudicated at the administrative level," and "relate to the same alleged behavior by AISS–that AISS failed to provide adequate and safe educational services to S.F." (Dkt. [215-1] at 18).  Like the plaintiffs in Doe, Defendants "adequately placed" before the ALJ allegations raised in their present counterclaims and presented evidence regarding these allegations, such that the Court finds they "fairly presented" the allegations contained in their counterclaims at the administrative hearing.  Unlike the parents in M.M. who did not raise the issue of retaliation during the administrative proceeding, Defendants in this action raised the issue of whether AISS provided adequate and safe educational services at the administrative hearing.  Defendants presentment of the relevant issues and supporting evidence through the administrative process, distinguish this action from N.B., 84 F.3d 1376, Babicz

v. Sch. Bd. of Broward Cnty., 135 F.3d 1420 (11th Cir. 1998), and M.T.V., 446 F.3d 1153.

In N.B., the Eleventh Circuit affirmed the dismissal of the plaintiff's claims for failure to exhaust the IDEA's administrative procedures. 84 F.3d at 1378. The plaintiff in that action alleged violations of the IDEA and Section 1983, but had not sought a due process hearing pursuant to the IDEA. Id. The Court therefore found that she had failed to first exhaust available administrative remedies. Id. at 1379. In Babicz, the "issue on appeal [was] whether the Babiczes must first exhaust their administrative remedies under Section 1415(f) of the IDEA before presenting federal claims regarding the denial of publicly financed special education under Section 504 and the ADA." 135 F.3d at 1422. The Court held that claims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief available under the IDEA before bringing suit under either statute. Id. The plaintiffs having failed to utilize the IDEA's administrative hearing process, the Court affirmed the dismissal of their civil action. Id. In M.T.V., the parents never requested a due process hearing in regards to their retaliation claim, and therefore the Court held they failed to exhaust their administrative remedies. 446 F.3d at 1159. Here,

21

Defendants have "exhaust[ed] the IDEA's administrative procedures to obtain relief that is *available under the IDEA . . . .*"  Babicz, 135 F.3d at 1422 (emphasis added).  At the administrative hearing the Defendants argued that AISS failed to provide safe and adequate educational services to S.F.  in violation of the IDEA and presented evidence that persuaded the ALJ to award substantial relief against AISS for its failure.

Because AISS has failed to demonstrate that Defendants have not exhausted their administrative remedies to the extent required by the IDEA, they have not demonstrated that they are entitled to judgment as a matter of law as to Defendants counterclaims based upon Section 504, the ADA, and Section 1983.  Therefore, Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims [215] is **DENIED**.

## IV.    Third-Party Claims

### A.    Third-Party Complaint Against Stokes

In its September 16, 2010 Order [179], the Court dismissed all of Third-Party Plaintiffs' claims against Stokes other than the state law claim for intentional infliction of emotional distress.  The Court ordered Third-Party Plaintiffs to file an amended complaint against Stokes consistent with the September 16 Order.  (Dkt. [189] at 2).  On October 4, 2010, Third-Party

Plaintiffs filed a Second Amended Complaint against Stokes [195].  The Second Amended Complaint contained causes of action that the Court had already dismissed, and allegations pertaining to the dismissed claims.  Stokes filed a Motion to Strike [200] portions of the Second Amended Complaint that she asserted contained immaterial, impertinent, and scandalous allegations.

On October 19, 2010, the Court held a scheduling conference in this matter.  At the hearing, Third-Party Plaintiffs' Counsel acknowledged that he had mistakenly included dismissed allegations in the Second Amended Complaint.  Pending at that time were motions for reconsideration of the Court's dismissal of certain claims, including some claims dismissed against Stokes.  Rather than having Third-Party Plaintiffs respond to the Motion to Strike [200], or filing another amended complaint, the Court instructed them to await the Court's ruling on the motions for reconsideration.  On November 23, 2010, the Court denied the pending motions for reconsideration.  On December 1, 2010, the Court ordered the Third-Party Plaintiffs and Third-Party Defendants to submit a joint proposed scheduling order.  A Proposed Joint Scheduling Order [222] was submitted.  In regards to amendments to the complaint against Stokes, the parties agreed that "S.F. et al. will file a Response to Stokes's Motion to Strike Portions of S.F. et al.'s Second Amended

Complaint or any amendments to the Third Party Complaint against Gwen

Stokes in response to such motion by December 15, 2010." (Dkt. [222] at 2).

On December 17, 2010, Third-Party Plaintiffs filed the Third Amended

Complaint against Stokes [223].  Stokes filed a Motion to Strike [231] the Third

Amended Complaint, asserting that "[w]hile S.F. et al. omitted some materials

in the December 17 Amended Complaint in response to Ms. Stokes previous

Motion to Strike, S.F. et al. continue to assert matters that are not before this

Court and are immaterial as to Ms. Stokes."  (Dkt. [231] at 7).  Stokes

acknowledges that "much of this language provides no new substantive or

factual allegations but rather attempts to elaborate on the same set of core facts

by speculating as to Ms. Stokes's motivation and by attaching inflammatory

descriptions of the alleged conduct."  (Id. at 6-7).  The Court agrees that some

of the additional language included in the Third Amended Complaint exceeds

the scope of this Court's directive at the October 19, 2010 scheduling

conference and the language of the Proposed Scheduling The Proposed

Scheduling Order [222] states that S.F. et al. will file "any amendments to the

Third Party Complaint against Gwen Stokes *in response to*" Stokes's Motion to

Strike.  (Dkt. [222] at 2).  Some of the additional language exceeds a response

to the concerns raised in the earlier Motion to Strike [200].

24

However, having examined this additional language, the Court does not find that it results in any prejudice to Stokes.  The Third Amended Complaint does not seek to allege any causes of action beyond the state law claim for intentional infliction of emotional distress.  While the Third Amended Complaint's additional language, in the words of Stokes, "attempts to elaborate on the same set of core facts by speculating as to Ms. Stokes's motivation and by attaching inflammatory descriptions of the alleged conduct," this additional language does nothing to aid Third-Party Plaintiffs' claim against Stokes.  Such superfluous language contained in a complaint is irrelevant to the disposition of the substantive issue of whether Stokes committed the tort of intentional infliction of emotional distress.  Plaintiffs' Motion to Strike [231] is **DENIED**. Third Party-Plaintiffs' Third Amended Complaint supersedes its Second Amended Complaint, and therefore Plaintiffs' Motion to Strike the Second Amended Complaint [200] is **DENIED AS MOOT**.

B.      Stokes' Motion for Protective Order [226]

Stokes seeks a protective order from the Court "bifurcating and/or limiting discovery and relieving her from answering any discovery beyond the issue of whether she acted with <u>actual malice</u>, and beyond an inquiry into her alleged <u>intent</u> to harm S.F. et. al."  (Dkt. [226] at 11-2 (emphasis in original)).

25

Stokes proposes this limitation because she intends to file a motion for

summary judgment asserting that she is entitled to official immunity, and

discovery beyond matters necessary to make that determination would be

premature and overly burdensome in light of the purpose of official immunity.

> In Georgia,
>
> [t]he doctrine of official immunity, also known as qualified
> immunity, offers public officers and employees limited protection
> from suit in their personal capacity.  Qualified immunity "protects
> individual public agents from personal liability for discretionary
> actions taken within the scope of their official authority, and done
> without wilfulness, malice, or corruption."  Under Georgia law, a
> public officer or employee may be personally liable only for
> ministerial acts negligently performed or acts performed with
> malice or an intent to injure. The rationale for this immunity is to
> preserve the public employee's independence of action without fear
> of lawsuits and to prevent a review of his or her judgment in
> hindsight.

Cameron v. Lang, 274 Ga. 122, 549 S.E.2d 341, 344 (Ga. 2001).  The Supreme

Court of Georgia has stated that the issue of a government employee's qualified

immunity should be resolved as early as possible in the legal proceedings.  Id. at

345.  However, given Third-Party Plaintiffs' allegations against Stokes and the

underlying facts of this action, the Court stated that "[a] determination of

whether the allegations regarding Stokes's intent have any merit is better left

AO 72A
(Rev.8/82)

for consideration on a motion for summary judgment and not at the motion to dismiss stage."

Bifurcating discovery could be proper if limiting the initial stage to the question of Stokes's intent alone would be substantially less burdensome than discovery related to the underlying tort of intentional infliction of emotional distress. However, given the law of intentional infliction of emotional distress in Georgia, there is a large amount of overlap between the evidence necessary to prove Stokes is entitled to official immunity and the evidence necessary to prove that she is liable for the tort.[5] The critical question for both matters is whether she intended to harm the Third-Party Plaintiffs. Therefore, the Court does not foresee much benefit to Stokes from bifurcating discovery. Further, if Stokes is unsuccessful at the summary judgment stage, bifurcation of discovery will likely extend the time needed to ultimately resolve this action and may lead

---

[5] Georgia law allows recovery for the infliction of emotional distress in the absence of physical injury if the conduct is malicious, wilful, or wanton. Ryckeley v. Callaway, 261 Ga. 828, 412 S.E.2d 826, 828 (Ga. 1992). To show willful or wanton conduct, Third-Party Plaintiffs must demonstrate that Stokes's behavior "evidenced a wilful intention to inflict Plaintiffs' injury, or a reckless disregard for the rights of Plaintiffs equivalent to an intentional violation of them." In re Tri-State Crematory Litig., 215 F.R.D. 660, 684-685 (citations omitted). Therefore, the critical question on liability is whether Stokes's behavior "evidenced a wilful intention" to inflict injury on Third-Party Plaintiffs-the same issue integral to resolving the question of official immunity.

to duplicative discovery efforts in the separate stages of discovery.  The Motion for Protective Order [226] is **DENIED**.

The Court, however, agrees with Stokes that some of Third-Party Plaintiffs' discovery requests are overbroad and are unlikely to lead to the discovery of admissible evidence.  In order to prevail on the claim of intentional infliction of emotional distress, S.F. et. al. must demonstrate that Stokes intended to inflict injury upon them, and that they suffered severe emotional distress.  Blockum v. Fieldale Farms Corp., 275 Ga. 798, 573 S.E.2d 36, 39 (Ga. 2002).  Stokes may seek a protective order against specific discovery requests that she believes are not reasonably calculated to lead to admissible evidence that will assist the trier of fact in determining whether she is liable for intentional infliction of emotional distress.[6]  A motion seeking such relief shall

---

[6] The Court has spoken to the parties previously about saving time and effort by acting as professionals and attempting to resolve issues through consultation rather than filing endless motions, but it appears that this direction has gone unheeded, by Counsel for S.F. and Counsel for AISS and Stokes.  While this case involves numerous issues and third-party claims, the sheer number of docket entries in this action that was filed 18 months ago demonstrates the lack of cooperation between the counsel and the unnecessary litigiousness of the parties.  The Court would again ask the parties to attempt to resolve disputes amongst themselves without involving the Court, unless necessary.

The IDEA allows the Court, in its discretion, to award attorneys' fees to, among others, a prevailing party who is the parent of a child with a disability and to a prevailing party who is a local educational agency against the attorney of a parent "who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation."  20 U.S.C. § 1415(i)(3)(B)(I)-(II).  From what the Court has

be filed within three days of the date of this Order.  Third-Party Plaintiffs will have three days from the filing of such motion to respond, and Stokes will have three days to reply to any response.

## V.    Scheduling

A Proposed Joint Scheduling Order [222] was submitted to the Court. Having considered the areas of agreement and the arguments of the parties on issues of disagreement, as well as Stokes' Proposed Amendments to the Joint Scheduling Order [239, 254] and Notices to the Court [257, 258], the following schedule will apply.  The discovery period will end May 1, 2011.  The pending discovery requests to Stokes, shall be due by March 11, 2011.  If the parties have not already done so, they shall exchange a list of proposed depositions with proposed dates by March 1, 2011.  Any party wishing to file an expert report will do so by March 15, 2011, with any responsive report due no later than April 15, 2011.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Quash [154] is **DENIED**, Plaintiff's Motion for Leave to File Sur-reply [175] is **DENIED**,

---

observed to this point, there has been needless extension of this litigation on both sides and no party that may be entitled to attorneys' fees may expect to receive an award for the full numbers of hours it has spent on this action.

Defendants' First Motion to Compel [178] is **GRANTED IN PART AND DENIED IN PART**, Third-Party Defendant Stokes's Motion to Strike [200] is **DENIED AS MOOT**, Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims [215] is **DENIED**, Third-Party Defendant Stokes's Motion for Protective Order [226] is **DENIED**, and Third-Party Defendant Stokes's Motion to Strike [231] is **DENIED**.

**SO ORDERED**, this  22nd  day of February, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)