**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ATLANTA INDEPENDENT SCHOOL SYSTEM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.F., a minor, by and through his parents and next friends, M.F., and C.F., and M.F. and C.F. Personally, | : | CIVIL ACTION NO. |
| | : | 1:09-CV-2166-RWS |
| Defendants, | : | |
| Counterclaimaints, and | : | |
| Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GWENDOLYN STOKES and SHERRI JONES, | : | |
| | : | |
| Third-Party Defendants. | : | |
| | : | |

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion in Limine [171], Plaintiff's Motion for Additional Evidence [233], and Defendants' Motion for Additional Evidence [236].  After considering the record the Court enters the following Order.

AO 72A
(Rev.8/82)

**Background**

The underlying action arises from allegations that the Atlanta Independent School System ("AISS") denied S.F. a free and appropriate public education ("FAPE") and violated the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-1491.  (Amended Complaint, Dkt. [75] at ¶ 3).  The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs . . ."  20 U.S.C. § 1400(d)(1)(A).  If the parents of a disabled child are dissatisfied with their child's individualized education program ("IEP"), the IDEA requires the educational agency to afford them an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  S.F.'s parents, dissatisfied with S.F.'s IEP, sought a due process hearing.

An administrative hearing was held in the Georgia Office of State Administrative Hearings ("OSAH") from March 9-13, 2009.  (Dkt. [75] at ¶¶ 7, 15).  On May 11, 2009, the Administrative Law Judge ("ALJ") issued a final order ("Final Order"), finding, among other things, that AISS failed to provide a FAPE to S.F., that his school placement by AISS was not appropriate, and that S.F. will not receive an appropriate education from AISS going forward. (Id. at

2

¶ 8; <u>see</u> Final Order, Dkt. [75-1]).  The ALJ also found that S.F. was injured by an adult as the result of being struck by a hand or object at school in his instructional program on October 21, 2008.  (Dkt. No. [75-1] at 18).  Based upon these findings, the ALJ ordered that:

> S.F. shall receive one year of compensatory education to be provided at the end of the Plaintiffs [*sic*] educational entitlement and further, that Plaintiffs shall be reimburse[d] by AISS for privately provided services and private assessments in the amounts stipulated at trial for the two (2) years prior to the filing of their Complaint through the 2008-2009 school year, including, but not limited to direct services, related services, and transportation or travel services.

(Dkt. [75-1] at 26).  The ALJ also ordered that "S.F.'s prospective placement for the remainder of his educational entitlement shall be in a private school at the Summit Learning Center" ("SLC"), and that AISS shall pay for the placement as well as supplementary educational services for S.F.[1]  (<u>Id.</u>).

Any party aggrieved by the result of the administrative proceedings in the state system has the right to bring a civil action in the district court.  20 U.S.C. §

---

[1] The Final Order also states:
In the event that placement at the [SLC] is no longer available, Plaintiffs shall choose another private school that appropriately provides and implements and ABA instructional program for S.F. that addresses S.F.'s individualized needs with an expense less than or equal to the cost associated with placement at the [SLC].
(Dkt. [75-1] at 26 n.10).

1415(i)(2)(A).  Plaintiff has filed the current action to appeal the ruling of the

ALJ.  Defendants have filed a Counterclaim against AISS, as well as a Third

Party Complaint against Gwendolyn Stokes, AISS's special education

compliance coordinator and Sherri Jones, S.F.'s classroom teacher.[2]

## Discussion

**I.     Motions for Additional Evidence [233, 236]**

A.     <u>IDEA Civil Action Framework</u>

The IDEA guarantees disabled students a FAPE.  <u>Sch. Bd. of Collier</u>

<u>Cnty. v. K.C.</u>, 285 F.3d 977, 979 (11th Cir. 2002).  To provide a FAPE, an IEP

is developed through consultation between school officials and a student's

parents.  20 U.S.C. § 1414(d)(1)(A)-(B).  If a parent is unsatisfied with a child's

IEP, the IDEA allows the parent an opportunity to present a complaint "with

respect to any matter relating to the identification, evaluation, or educational

placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. §

1415(b)(6).  In evaluating such a complaint, courts are to ask two questions: (1)

whether the school complied with the IDEA's procedures; and (2) whether the

IEP developed through those procedures is reasonably calculated to enable the

---

[2] Defendants and Ms. Jones recently filed a notice of dismissal of claims against Ms. Jones pursuant to a settlement agreement between these parties.  (Dkt. [282]).

student to receive educational benefits.  Loren F. v. [AISS], 349 F.3d 1309, 1312 (11th Cir. 2003); K.C., 285 F.3d at 982.  The ALJ answered both questions in the negative, and AISS, aggrieved by the Final Order, has brought this civil action.

In resolving this civil action this Court must determine whether AISS complied with the IDEA's procedures and whether S.F.'s IEP was designed to, and did, provide him with a FAPE.  In making that determination, this Court: (1) shall receive the records of the administrative proceedings; (2) shall hear additional evidence at the request of a party; and (3) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).  In receiving and reviewing the administrative record, this Court is to give due weight to the ALJ's Final Order and should be careful not to substitute its judgment for that of the ALJ, but the extent of deference to be given to the Final Order is left to the Court's discretion.  Walker Cnty. Sch. Dist. v. Bennett, 203 F.3d 1293, 1297 (11th Cir. 2000).[3]  The question before the Court, whether AISS provided an adequate education under the IDEA, "is a mixed question of law and fact subject to *de*

---

[3] The IDEA contemplates that the source of the evidence considered by the district court generally will be the administrative hearing record.  Bennett, 203 F.3d at 1298 (quoting Town of Burlington v. Dep't of Educ., 736 F.2d 773 (1st Cir. 1984)).

AO 72A
(Rev.8/82)

*novo* review." Draper v. [AISS], 518 F.3d 1275, 1284 (11th Cir. 2008) (citation

omitted).  The ALJ's factfindings "are considered to be *prima facie* correct, and

if a reviewing court fails to adhere to them, it is obliged to explain why." Loren

F., 349 F.3d at 1314 n.5 (quoting McLaughlin v. Holt Pub. Sch. Bd. of Educ.,

320 F.3d 663, 669 (6th Cir. 2003)).  In contrast, the "district court conducts an

*entirely de novo* review" of the ALJ's findings of law.  K.C., 285 F.3d at 983.

Presently the Court must determine what "additional evidence" offered

by AISS and S.F. it will consider in deciding whether AISS provided an

adequate education, and if not, in determining what relief is appropriate.  The

Eleventh Circuit in Bennett set forth the standard to be applied in determining

what additional evidence, if any, should be admitted, endorsing the standard

articulated by the First Circuit in Town of Burlington, 736 F.2d 773.  Bennett,

203 F.3d at 1299 ("We agree with this well reasoned resolution . . . [and]

adopt[] the same holding.").  The reasons for supplementation of the

administrative record will vary, but

> might include gaps in the administrative transcript owing to
> mechanical failure, unavailability of a witness, an improper
> exclusion of evidence by the administrative agency, and evidence
> concerning relevant events occurring subsequent to the

6

administrative hearing.[4]  The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

Id. at 1298 (quoting Town of Burlington, 736 F.2d at 790).  In determining what additional evidence to accept, the Court "must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo.*."  Id. (quoting Town of Burlington, 736 F.2d at 791).  Additionally, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."  Roland M. v. Concord Sch. Comm., 910 F.2d 983, 996 (1st Cir. 1990); see also K.C., 285 F.3d at 981 (stating party provided a "solid justification" for introducing additional evidence (citing Roland M., 910 F.2d at 996)).

The IDEA "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony,"  Bennett, 203 F.3d at 1299 (quoting Town of Burlington, 736 F.2d at 790).  The Eleventh Circuit has not adopted a rigid rule disallowing testimony from all who did, or could have, testified before the administrative hearing, but such witnesses are rebuttably presumed to be foreclosed from testifying before the district court.  Id. (quoting

---

[4] This is a non-exhaustive list of possible reasons for supplementation of the evidence.  Bennett, 203 F.3d at 1299 n.12.

7

Town of Burlington, 736 F.2d at 791).  In determining which witnesses, if any, should be allowed to offer additional testimony,

> a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources. The court should look with a critical eye on a claim, such as made here, that the credibility of a witness is a central issue.

Id. (quoting Town of Burlington, 736 F.2d at 791).  The Court will examine each party's proffer of additional evidence within this framework.  Any additional evidence allowed by the Court will be received through a hearing on additional evidence (the "Hearing") to be held on June 13-14, 2011.  Further, while the Court states below that it will allow certain testimony or documents to be received at the Hearing, the admission into the record of any testimony or documents at the hearing will be subject to the Federal Rules of Evidence.

      B.      Plaintiff's Motion for Additional Evidence [233]

AISS seeks to admit: (1) testimony of Dr. Bryna Siegel, an expert witness on autism; (2) videos and documents relied upon by Dr. Siegel and videos and documents for use in cross-examining Defendants' witnesses; (3) testimony of audio experts; (4) testimony of Natasha Bailey, S.F.'s North Metro teacher during the spring of 2007 and 2007-08 school year; (5) documentation from

8

SLC showing an overview of the students they serve; (6) testimony of Alan Taylor, a social worker with North Metro; (7) S.F.'s Aurora Strategies application and SLC application; (8) a sampling of S.F.'s "How was my day" sheets from SLC; and (9) AISS's board policy and administrative rule regarding the unauthorized recording of a classroom.  As an initial matter, AISS also seeks, and will be given, the right to cross-examine any of Defendants' witnesses allowed to offer additional evidence.  AISS also requests the right to cross-examine the author(s) of any document which Defendants seek to introduce as additional evidence.  As discussed below, Defendants will be allowed to introduce a proffered document if an individual testifying at the Hearing can lay a proper foundation for that document.  At the hearing, AISS will have an opportunity to cross-examine the individual offering the document into evidence.  AISS may rely upon any of the additional evidence the Court allows Defendants to tender.  Finally, AISS seeks to "reserve[] the right to introduce any evidence that serves to rebut any arguments made by S.F. et al on this appeal."  Such a request defeats the purpose of a specific proffer of additional evidence and is denied.

9

   i.  Testimony of Dr. Siegel.

Dr. Siegel was asked to address three questions in her expert report: (1) whether S.F. received a FAPE from AISS; (2) whether the ALJ's award of services at SLC is appropriate; and (3) whether AISS could devise a program reasonably calculated to provide S.F. with FAPE.[5]  (Dkt. [214-1] at 1).  Dr. Siegel's report enumerates 38 items which she reviewed in reaching her conclusions as to these three questions.  (Id. at 1-2).  As to whether S.F. received FAPE from AISS, Dr. Siegel's report states:

> [I]n addressing this issue it is important to point out that I have not had an opportunity to see [S.F.] in any [AISS] setting, nor have I any first-hand knowledge of any of the classes he was in, nor of teaching staff who have worked with [S.F.] . . . . Therefore to construct a picture of classroom practices, I have relied mainly on IEPs, and on testimony given to Judge Gatto in the due process hearing by S.F.'s last [AISS] classroom teacher Sherry Jones.
>
> . . .
>
> The IEP's give some idea of what [S.F.] was being taught[] (content very similar to his current program at Summit)[.] However, neither IEPs nor Ms. Jones' examination/cross-examination contain much elucidation about classroom teaching strategies (the '*how*') so it is not possible to evaluate *how* [S.F.] was being taught in his [AISS] placements and whether it was

---

[5] The Court is cognizant of Defendants' objection to Dr. Siegel's export report for its failures to comply with Fed. R. Civ. P. 26(a)(2)(B)(iii)-(v).  The Court agrees that the report and disclosures do not comply fully with the requirements of Rule 26. However, these failures do not merit the exclusion of all of Dr. Siegel's opinions.

appropriate.  Considering both 'what' and 'how' are important in ascertaining whether FAPE was offered.

. . .

In conclusion, Ms. Jones' testimony transcript was so focused on these three issues (the AB[L]LS,[6] data-taking and a parent log) that it circumvented any discussion of what was being taught or how, and so it was impossible to conclude from it whether FAPE was provided or not.

(Id. at 2-4).  Dr. Siegel does opine that during the administrative proceeding too much emphasis was placed upon use of the ABLLS, the recording of data with teaching trials, and the use of a parent-log, and that the absence of such evidence is not indicative of an ineffective classroom.  Nonetheless, she admits that she is unable to conclude whether a FAPE was provided to S.F. in his placement.  Therefore, the Court will not allow Dr. Siegel to offer any evidence as to whether S.F. was provided a FAPE by AISS.

The Court will allow Dr. Siegel to offer additional evidence as to whether the ALJ's award of services at SLC is appropriate.  Dr. Siegel has had the opportunity to observe S.F. at SLC and can compare her observation to the description of the placement offered during the administrative proceeding.  Dr.

---

[6] The ABLLS is "an assessment for keeping track of progress on a specifically-associated curriculum when discrete trials are used as a teaching method."  (Dkt. [214-1] at 3).

11

Siegel's observation of S.F. at SLC occurred after the administrative hearing and will not be overly duplicative of testimony provided during the administrative hearing.  Finally, is it the Court's responsibility to determine whether the relief awarded by the ALJ is appropriate and Dr. Siegel's testimony will aid in that effort.

Plaintiff also seeks to have Dr. Siegel offer expert testimony as to whether an appropriate program for S.F. could be devised by AISS.  Her expert report is purely hypothetical in this regard.  It does not identify any specific program or classroom currently available in AISS that would be appropriate for S.F., but rather notes that "[s]uch a program could be devised in [AISS] as other public schools nationally do support such programs."  (Dkt. [214-1] at 8).  Dr. Siegel did observe one AISS middle school classroom for students with special needs, but did not find it to be appropriate for S.F.  (Id. at 4).  Dr. Siegel may offer additional evidence as to what an appropriate program for S.F. would look like in comparison to what he is currently receiving from SLC, but she has no basis upon which to testify that any such program is currently offered by AISS. In testifying at the Hearing Dr. Siegel may rely upon the documents identified in her expert report to the extent they are relevant to the appropriateness of S.F.'s placement at SLC or to what would be an appropriate placement for S.F.

ii.    Videos and other documents.

To the extent that AISS requests to admit "[a]ny of S.F.'s IEP's or goals and objectives, progress reports, assessment records, raw data, and evaluations, handwriting samples or work product from his private service providers from the date of his removal from public school (October 22, 2008) to present" through the "course of its expert's testimony and the cross-examination testimony of S.F.'s experts, witnesses, and authors," such a request is overly broad and fails to satisfy the standard for a specific proffer. (Dkt. [233-1] at 20-21). The Court will allow AISS to use any of the items specifically identified in Dr. Siegel's expert report, the videos contained on CDs 1-4 (Dkt. [235]), and any other documents that the Court deems admissible through this Order during the testimony of witnesses at the hearing.

iii.    Testimony of audio experts.

For the reasons stated in Section II, below, the audio recording in question is not admissible, and for the reasons stated in Section I.B.vii., below, the Court will not relitigate the ALJ's finding of fact that S.F. was injured at school. Therefore, there is no need for the testimony of audio experts concerning the audio recording.

13

iv.     Testimony of Natasha Bailey

Natasha Bailey was S.F.'s teacher at North Metro during the spring of 2007 and during the 2007-08 school year.  Ms. Bailey did not testify at the administrative hearing, as she had a doctor's excuse relating to pregnancy. AISS argues that Ms. Bailey's testimony is "crucial to this case" because she was S.F.'s teacher for the majority of the time at issue in comparison to Ms. Jones, who taught S.F. for less than three months.  (Dkt. [233-1] at 16).  AISS asserts that Ms. Bailey will refute the ALJ's finding that S.F. was not provided a FAPE while in her classroom.  AISS may be making quite an assumption as it "has been unable to secure Ms. Bailey's cooperativeness in this proceeding." (Id. at 17).  Defendants contend that Plaintiff's proffer fails for lack of specificity and because Plaintiff did not seek to depose her during an extensive discovery period.  (Dkt. [255] at 25).  Given Ms. Bailey's unavailability at the hearing below, the fact that she was S.F.'s primary teacher for the majority of his time at his last AISS placement, and AISS's assertion that it has made efforts to secure her testimony to no avail, the Court will allow her to testify at the Hearing.  As discussed in Section I.D, *infra*, Defendants will be given an opportunity to depose Ms. Bailey prior to the hearing.  If Plaintiffs are unable to

14

make Ms. Bailey available for such deposition, her testimony will not be received at the hearing.

       v.    Documentation from SLC showing an overview of the students they serve.

AISS seeks to admit a document from SLC's website which states that they serve students from 2-12 years of age as support for it's position that SLC is not an appropriate placement going forward for S.F., currently 12 years old. Determining the appropriateness of the ALJ's remedy is one of this Court's responsibilities in an IDEA action, and evidence concerning the capabilities of the placement awarded by the ALJ will assist in making that determination. Further, Defendants have not objected to this proffer in their Response [255]. Therefore, the Court will allow the admission of this document through the testimony of an appropriate witness at the hearing.

       vi.    Testimony of Alan Taylor.

AISS seeks to introduce the testimony and notes of Alan Taylor, the North Metro social worker that it maintains immediately made a report to the Georgia Department of Family and Children Services ("DFCS") following C.F.'s notice to North Metro that S.F. was abused at school on October 21, 2008.  AISS had identified Mr. Taylor as a potential witness at the

administrative hearing, but chose not to have him testify at the hearing.  (Dkt.

[255-10]).  AISS maintains that "it could not have anticipated that the ALJ

would have made a finding that DFCS was not properly reported to."  (Dkt.

[233-1] at 23).  Nonetheless, the ALJ found that

> AISS failed to follow legally required and ethically required steps
> to promptly notify DFCS and law enforcement officials.  AISS
> failed to immediately implement an internal investigation,
> consistent with its own policies.  Plaintiffs filed complaints with
> law enforcement officials and with DFCS.  Only after AISS and
> North Metro learned of the existence of the parents' complaints
> were reports made by mandatory reporters and by [AISS] to
> appropriate officials for investigation.

(Dkt. [75-1] at 19).[7]  The ALJ's finding of fact that AISS and North Metro

failed to take the appropriate steps to report the alleged abuse is to be

considered *prima facie* correct.  Loren F., 349 F.3d at 1314 n.5.  AISS may

have believed that based upon the evidence it presented to the ALJ on this

question, such a finding would not have been possible.  However, this belief

would have been an assumption on the part of AISS which did not prove to be

correct.

---

[7] The ALJ also strongly urged "AISS to adopt and enforce a mandatory system of reporting to [DFCS] and to law enforcement, if one does not exist, of any injury occurring in any AISS or North Metro classroom."  (Dkt. [75-1] at 27 n.11).

Defendants argued in the presentation of its case that AISS and North Metro failed to properly report the alleged abuse of S.F. to the appropriate authorities.  AISS presented its evidence at the administrative hearing after Defendants and chose not to call Mr. Taylor to testify on this, or any other, issue.  Unlike concerns of cost associated with an expert witness such as Dr. Siegel, no similar consideration exists for why AISS did not call Mr. Taylor, a lay witness that it identified on its witness list.  Such a witness is rebuttably presumed to be foreclosed from testifying at this stage in the action.  Bennett, 203 F.3d at 1299. AISS's assumption as to how the ALJ would rule does not provide a "solid justification" for departure from this presumption.  The Court will not allow the testimony of Alan Taylor or the admission of his notes at the Hearing.

> vii.   Aurora Strategies application, SLC application, and SLC "How was my day" sheets.

AISS seeks to introduce these documents

> for the purpose of showing the Court that S.F. has had and continues to have significant self-injurious behavior and aggressive temper-tantrums.  This material also exemplifies that S.F.'s self-injurious and aggressive behavior is often triggered by hunger and a desire for food.  This material likewise reveals that this behavior continues to occur in S.F.'s private setting.

(Dkt. [233-1] at 24).  AISS argues that

17

> [i]n the case at hand, the testimony revealed that on the day in question, S.F. was attempting to get food and was upset that he could not eat the pizza that he had been reaching for. S.F. et al. allege that S.F. was abused following this incident, but were unable to put forth any evidence to support this. In contrast, this evidence show that it was just as likely that S.F. injured himself at some point over the next 24 hours and that the ALJ's finding that S.F. was injured at school is erroneous.

(Id.).

The Final Report states that "[b]ased upon a preponderance of the evidence, the Court finds that S.F. was physically abused and injured in his classroom at North [M]etro during the instructional day." (Dkt. [75-1] at 18-19). This finding of fact was made in light of the ALJ's finding that S.F. "can be aggressive, verbally and physically, to himself, though he is not self-injurious. He can also strike or hit himself in the chest, head and back, due to lack of communication, in a non-injurious fashion." (Id. at 2). The ALJ had before it evidence that S.F. struck himself in the chest, head and back.[8] Even assuming that the ALJ did not have evidence that this behavior was intensified in response to denial of access to food, none of these purported documents

---

[8] Compare this to the language from the Aurora Strategies application that Defendants highlight: "When S[F.] is upset, he will hit himself (in the forehead, chest and back) and may hit others or kick if very upset . . . . It varies. He is usually easily redirected, but more difficult if it involves food access or if he is fixated on an item he cannot have." (Dkt. [233-1] at 24).

demonstrate that "it was just as likely that S.F. injured himself" outside of school.  The strength of the logical conclusions that can be drawn from this evidence, circumstantial at best, is not sufficient to upset the ALJ's findings of fact, when such findings were made with the benefit of live testimony and in light of credibility determinations.  In light of the minimal value, if any, that these documents will add to the evidence contained in the record of the administrative proceeding, Plaintiff has failed to provide a "solid justification" for why the Court should allow these documents as additional evidence. Considering that the ALJ's findings of fact are considered to be *prima facie* correct, this Court has not been presented with any additional evidence that merits a revisiting of the ALJ's finding as to the cause of S.F.'s injuries.  The Aurora Strategies application, SLC application, and SLC "How was my day" sheets will not be admissible at the Hearing for the purpose of arguing that S.F. was not injured at school on October 21, 2008.

viii.    AISS Board policy and administrative rule.

AISS seeks to introduce the Atlanta Board of Education Policy JCDAF and the accompanying administrative rule.  The policy and the rule address the prohibition of unauthorized recording in a classroom.  As the propriety of the

audio recording of S.F.'s classroom will not be in issue at the Hearing, the

Court will not allow the admission of the policy or rule as additional evidence.

C.    Defendants' Motion for Additional Evidence [236]

As an initial matter, Defendants "contend that a number of AISS['s]

issues must either be dismissed on the failure to exhaust or rejected as frivolous,

without any evidentiary support.  Another alternative is to allow S.F.'s

proffered declarations which positively address these claims to demonstrate

their lack of merit."  (Dkt. [236-1] at 10).  To the extent AISS has failed to

exhaust claims in the administrative proceeding, the appropriate method for the

elimination of those claims, at this stage in the action, is a motion for summary

judgment, not the proffer of additional evidence.  Also, Defendants need not

fret that the Court will find claims lacking "any evidentiary support" to be

meritorious.  As to additional evidence, Defendants seek to proffer 22 exhibits.

i.    December 14, 2010 IEP.

Defendants seek to admit an IEP (Ex. C) formulated at a private IEP

meeting held by Defendants on December 14, 2010 at SLC, as well as an audio

recording and transcript of the meeting (Ex. D).  AISS objects that it was never

invited to attend the meeting nor informed that it was occurring, and therefore

such a purported "IEP meeting" fails to meet the requirements of 34 C.F.R. §

300.321.  (Dkt. [256] at 4).  AISS does not object to the use of the IEP document in the course of testimony admitted as additional evidence, but does object to the admission of the transcript or recording of the meeting on the grounds that the meeting was self-serving and conducted to create evidence for this action.  (Id. at 5).  The meeting was facilitated by an employee of Defendants' Counsel and there is no indication that any similar meeting was held at SLC concerning S.F. or any other child in the more than two years that S.F. has been there.  (Id. at 5-6).  Defendants do not provide a "solid justification" for the admission of either the transcript or the recording.

The Court will allow the admission of the IEP itself, as SLC's plan for the provision of services to S.F., through the direct or cross-examination of an individual otherwise allowed to testify at the Hearing, but will not allow the admission of the transcript or recording of the purported IEP meeting.

        ii.     Individuals providing treatment and/or services to S.F.

Defendants seek to introduce: the assessment and education plan of Ms. Yount, S.F.'s speech and language therapist (Ex. E); the report of Dr. Attalla, S.F.'s psychiatrist (Ex. F); the report and recommendation of Ms. Rosner, S.F.'s evaluating assistive technology specialist (Ex. G); the reports of Ms. Wexler, S.F.'s treating oral motor specialist (Ex. H); and the Report of Ms. Margo,

S.F.'s evaluating occupational therapist (Ex. I).  Defendants argue that these reports all demonstrate the appropriateness of the ALJ's award of services and placement in contrast to what S.F. was receiving from AISS.  AISS does not object to the introduction of the testimony of any of these individuals, but does object to the admission of their reports without the opportunity to cross-examine any of the authors of the reports.  (Dkt. [256] at 6-10).  The Court will not accept the reports of these individuals standing alone.  Defendants may call any or all of these individuals at the Hearing and Plaintiff will have an opportunity to cross-examine each testifying individual.

> iii.    Report of Barry Dickey.

Mr. Dickey is Defendants' expert on the authenticity of the audio recording, the transcript of the recording made by C.F., and the content of the recording.  (Dkt. [236-1]).  For the reasons discussed in Section II of this Order, the audio recording and/or the transcript of the recording will not be admitted and therefore there is no need for the testimony of Mr. Dickey.

> iv.    Report of Shauna Courtney.

Shauna Courtney, a co-founder of SLC, has submitted her expert opinion on S.F.'s educational programming at SLC.  (Dkt. [100-2, 225-1]).  Her report (Ex. K) addresses the course of treatment and instruction at Summit for S.F., his

progress, observations conducted, the creation of the 2010 IEP, her opinion as to the testimony of Dr. Siegel, and the continued appropriateness of SLC's services for S.F.  (Dkt. [236-1] at 17).  AISS objects to the admission of the report alone, but does not object to the testimony of Ms. Courtney.  The Court will not accept the report of Ms. Courtney standing alone, but will allow her to testify at the Hearing and will allow Plaintiff the opportunity to cross-examine her.

> v.    Testimony of Jennifer Lacinak Bontrager

Defendants seek to admit the declaration of Ms. Bontrager (Ex. L) to update her observations of S.F., her assessment of S.F.'s progress, and the appropriateness of services provided to S.F.  (Id. at 18).  AISS objects to the admission of the report alone, but does not object to the testimony of Ms. Bontrager.  The Court will not accept the report of Ms. Bontrager standing alone, but will allow her to testify at the Hearing and will allow Plaintiff the opportunity to cross-examine her.

> vi.    SLC Progress Reports and Current ABLLS

Defendants offer SLC Progress Reports (Ex. A) and the updated ABLLS (Ex. B) as evidence of the appropriateness of S.F.'s current placement and to demonstrate the progress he has made since leaving AISS.  (Id. at 12-14).  AISS

23

does not object to the introduction of either the progress reports or the ABLLS so long as a proper foundation can be established for their admissibility and AISS has the opportunity to cross-examine someone concerning the progress reports and the ABLLS.  The Court will not accept either the progress reports or the ABLLS standing alone.  However, if one of the other individuals allowed to testify at the Hearing can lay the proper foundation for the admissibility of these documents, the Court will allow for their admission.

       vii.    Declaration of C.F.

Defendants seek to admit the declaration of C.F. as evidence concerning S.F.'s program at SLC, the services provided to him, his progress, his use of a communication device, and the actual costs of the relief awarded by the ALJ. (Id. at 18-19).  AISS objects to the admissibility of the declaration on numerous grounds, but appears to be amenable to C.F.'s testimony if they have the opportunity to depose her and cross-examine her.  The Court will allow C.F. to offer live testimony at the Hearing, but will not accept her declaration by itself as additional evidence.

       viii.   Transcript of Ms. Jones's termination hearing and decision of GDOE on appeal of termination.

Defendants seek to admit the transcript (Ex. N) of a hearing concerning whether Ms. Jones should be terminated and the decision of the GDOE to affirm her termination (Ex. T).  Both documents, though they address matters related to the provision of a FAPE in Ms. Jones classroom, primarily deal with her termination.  Defendants conducted a thorough examination of Ms. Jones at the administrative proceeding as to her provision, or lack thereof, of a FAPE to S.F.  AISS was present at the administrative hearing and had the opportunity to defend its interests.  AISS was not involved in the termination of Ms. Jones, as she was an employee of MRESA.[9]  The purpose of the termination proceeding was not to determine whether S.F. received a FAPE, but rather whether adequate grounds existed for the termination of Ms. Jones.  As these documents are cumulative of testimony received by the ALJ in most regards and only minimally relevant to the questions before this Court, the Court will not allow their admission.

> ix.    AISS audit of its special education programs and GDOE audit of GNETS

Defendants seek to introduce an AISS internal audit of its special

---

[9] MRESA is the Metropolitan Regional Educational Service Agency which provides services to school districts in metro Atlanta.  MRESA operates the North Metro program at which S.F. was placed.

education programs (Ex. O) and a GDOE audit of GNETS[10] (Ex. P).  Both the

AISS and GDOE audit identify failures in the provision of special education

services to qualified students both within AISS and throughout the state.

However, neither audit speaks directly to questions before this Court: whether

S.F. received a FAPE in his AISS classroom and whether the services awarded

by the ALJ are appropriate.  While both audits may provide generalized

evidence of the inappropriate provision of services to students with special

needs, neither speaks directly to S.F. and his placement through AISS.  The

Court will not accept either audit as additional evidence.

> x.     AISS 30(b)(6) deposition and AISS responses to requests to admit.

Defendants seek to admit the transcript (Ex. Q) of the deposition of

Constance Goodson, AISS's Rule 30(b)(6) agency representative and AISS's

responses and amended responses to Defendants' requests to admit (Ex. R).

While Defendants generally assert that these documents are relevant to the

decisions this Court must make in this action and rebut contentions raised by

AISS, it fails to point to any specific portion of the deposition transcript or any

specific response to a request to admit that is probative and admissible under

---

[10] GNETS is the Georgia Network for Educational Therapeutic Support, of which the North Metro program is a part.

the standard for additional evidence set forth by the Eleventh Circuit in <u>Bennett</u>,

203 F.3d 1293.  Failing to make a sufficient proffer or provide a "solid

justification" as to either the deposition or the responses to the requests to

admit, the Court will not allow either as additional evidence.

           xi.      Cumulative exhibit on failure to implement placement.

The cumulative exhibit (Ex. U) that Defendants seek to introduce relates

to Defendants' contention that AISS has failed to provide adequate services

under the maintenance of placement agreement as required by the Final Order.

(Dkt. [236-1] at 24).  However, the first document of the cumulative exhibit is

an August 12, 2009 letter from GDOE to AISS noting that AISS "has provided

evidence of maintenance of placement since May 11, 2009 and to date is in

compliance with 34 C.F.R. § 300.518(d)."  (Dkt. [236-21] at 4).  To the extent

there were further difficulties obtaining payment for services from AISS, such

problems appear to have been resolved no later than September 16, 2009.  (<u>Id.</u>

at 9).  The Court will not accept the cumulative exhibit standing alone as

additional evidence.  To the extent that C.F. can lay the proper foundation for

any of the documents contained in the cumulative exhibit, that document may

be admitted during her testimony.  The Court will allow C.F. to testify at the

Hearing as to whether AISS met their "maintenance of placement" requirements pursuant to the Final Order.

xii.     Audio and Video Exhibits

The Court has already allowed for the admission of the videos proffered by Defendants as part of Exhibit V.  (See Section I.B.ii, *supra*).  For the reasons stated in Section II, *infra*, the Court will not allow the admission of the audio recording of S.F.'s classroom on October 21, 2008.  Also, for the reasons discussed in Section I.C.i, *supra*, the Court will not allow the admission of the audio recording of the private IEP meeting conducted at SLC.

D.     Hearing on Additional Evidence

The Court will allow the presentation of additional evidence at the Hearing to be held on June 13-14, 2011 in accord with the holdings set forth in Section I.B and I.C, *supra*.  Both parties will have 45 days from the date of this Order to depose any and/or all individuals that the Court will allow to testify at the Hearing.  Any individual that is not made available for deposition during this period will not be allowed to provide testimony at the Hearing.  Each party will have until May 20, 2011 to submit any motions challenging the sufficiency

of an opposing party's expert witness.[11]  The opposing party's response to such a motion will be due within seven days of the filing of the motion, but in no instance later than May 27, 2011.  The movant's reply to any such response will be due within seven days of the filing of the response, but in no instance later than June 3, 2011.

The Hearing has been scheduled for two days and each party will be given a fixed amount of time within which it may present additional evidence.  Each party may also submit a trial brief to the Court prior to the Hearing.  The Court will hold a phone conference prior to the Hearing to discuss the parameters within which the Hearing will be conducted, as well as what type of trial brief the Court would find helpful.  The parties are strongly encouraged to confer as to the documents each intends to present at the Hearing and stipulate to the authenticity or admissibility of any document upon which the parties can agree.

---

[11] The Court encourages the parties not to wait until May 20, 2011 to submit motions challenging the sufficiency of an opposing party's expert.  The Court will endeavor to rule on any such motions as quickly as possible after the briefing on such motion is complete.  An early resolution of any such challenge is to the benefit of the parties and the Court.

AO 72A
(Rev.8/82)

## II.     Plaintiff's Motion in Limine [171]

AISS moves to restrict any attempt by Defendants "to present evidence in any manner whatsoever, concerning the audio recordings of S.F. and his surroundings purportedly made on October 21, 2008." (Dkt. [171] at 1).  As noted above the Court will not consider any additional evidence as to the ALJ's finding of fact that S.F. was injured at school on October 21, 2008.[12]  However, that decision alone does not moot Plaintiff's Motion.  Defendants have filed Counterclaims under the ADA, Section 504, and Section 1983 against Plaintiff, which unlike this Court's review of the Final Order, are not constrained by the IDEA.  Defendants' Counterclaims under the ADA, Section 504, and Section 1983 may be tried to a jury, and any evidence admitted in such a trial will be pursuant to the Federal Rules of Evidence without an IDEA overlay.

The parties debate whether the audio recording is admissible, including whether it can be properly authenticated.  The Court need not address these arguments of the parties because the admission of the audio recording is prohibited by federal law.  See 18 U.S.C. § 2515.  Section 2515 states:

---

[12] See Section I.B.vii ("Considering that the ALJ's findings of fact are considered to be *prima facie* correct, this Court has not been presented with any additional evidence that merits a revisiting of the ALJ's finding as to the cause of S.F.'s injuries.")

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of [United States Code Title 18, Chapter 119].[13]

"Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ."  18 U.S.C. § 2510(2).[14]  This Court has previously held that "[a]n adult or child in a classroom may have no expectation that conversations that occur therein will

---

[13] The Supreme Court has noted that Section 2515 "serves not only to protect the privacy of communications, but also to ensure that the courts do not become partners to illegal conduct."  Gelbard v. United States, 408 U.S. 41, 51, 92 S. Ct. 1257, 33 L. Ed. 2d 179 (1972).  The Court has previously held that the audio recording is illegal under Georgia law.  (See Dkt. [179] at 52 ("C.F.'s possession of the eavesdropping device is a felony under Georgia law. . . . In addition, the recording of the conversations of another that originate in a private place also constitutes a felony.").

[14] Intercept means the "acquisition of the contents of any . . . oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  Electronic, mechanical, or other device means "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," subject to certain exceptions not applicable to the recording device used by C.F.  18 U.S.C. § 2510(5); see also Dkt.[179] at 50-51 (holding that digital recorder sewn into S.F.'s collar constitutes an eavesdropping device because it permitted user to secretly record private conversations of others).

31

not be heard by others in the classroom, however they are 'entitled reasonably

to expect to be safe from casual or hostile intrusion or surveillance.'" (Dkt.

[179] at 52 (quoting O.C.G.A. § 16-11-60(4)).[15]  Therefore, the audio

recordings of S.F. and his surroundings made on October 21, 2008 constitute

the interception of oral communication.  The intentional interception of an oral

communication, as well as the intentional disclosure, or attempted disclosure, of

the contents of an oral communication are violations of Title 18, Chapter 119,

of the United States Code.  18 U.S.C. § 2511(1)(a)-(c).  Therefore, "no part of

the contents of such communication and no evidence derived therefrom may be

received in evidence in any trial,  hearing, or other proceeding in or before any

court . . . of the United States."  18 U.S.C. § 2515.  Defendants' Motion in

Limine [171] is **GRANTED**.

## Conclusion

For the aforementioned reasons, Plaintiff's Motion in Limine [171] is

**GRANTED**, Plaintiff's Motion for Additional Evidence [233] is **GRANTED**

---

[15] See also Dkt. [216] at 7 (noting that parents, students, and staff had a reasonable expectation that "AISS students would, at the very least, remain free from having their activities and conversations recorded.")

**in part and DENIED in part**, and Defendants' Motion for Additional

Evidence [236] is **GRANTED in part and DENIED in part**.

      **SO ORDERED**, this  31st  day of March, 2010.


**RICHARD W. STORY**
United States District Judge

33